# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 26, 2000 Session

## STATE OF TENNESSEE v. JIMMY LEE CULLOP, JR.

**Appeal from the Criminal Court for Sullivan County**
**No. S40,256 & S40,257     R. Jerry Beck, Judge**

---

**No. E2000-00095-CCA-R3-CD**
**April 17, 2001**

---

Jimmy Lee Cullop, Jr. appeals from his convictions of aggravated burglary, theft of property valued over $500, felony reckless endangerment, speeding, felony evading arrest, violation of an habitual motor vehicle offender order, and theft of property valued at $10,000 or more. Cullop claims that the evidence is insufficient to support his convictions of aggravated burglary, reckless endangerment, and the two counts of theft. Further, he alleges that a law enforcement officer's in-court identification was tainted by the officer's previous viewing of a photograph of the defendant, that the trial court erred in denying a mistrial when a state's witness testified that the defendant was "on probation or something," and that he was improperly sentenced as a Range II offender and given consecutive sentences. Upon consideration, we discern error in the judgment for felony evading arrest and remand to the trial court for further action. We discern error or possible error in the judgments for theft over $10,000 and speeding and remand for correction of clerical error. In all other respects, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part,**
**Vacated in Part, and case Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOSEPH M. TIPTON, J., filed a concurring and dissenting opinion.

John B. Nisbet, III, Cookeville, Tennessee; Stephen M. Wallace, Gale K. Flanary and Terry L. Jordan, Assistant Public Defenders, for the Appellant, Jimmy Lee Cullop, Jr.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Following the theft of a friend's vehicle, the burglary of and theft from the friend's home, and a high-speed chase with a law enforcement officer, the defendant, Jimmy Lee Cullop, Jr., was convicted at trial in the Sullivan County Criminal Court of aggravated burglary,[1] theft of property valued over $500,[2] felony reckless endangerment,[3] speeding,[4] felony evading arrest,[5] violation of an habitual motor vehicle offender order,[6] and theft of property valued at $10,000 or more.[7] The trial court sentenced the defendant as a Range II offender to an effective sentence of fourteen years, to be served consecutively to the unrelated seven-year sentence the defendant was already serving. In this direct appeal, the defendant raises four challenges to the firmity of his convictions:

1. Whether there is sufficient evidence to sustain the convictions of aggravated burglary, reckless endangerment, and the two theft counts.
2. Whether a law enforcement officer's in-court identification of the defendant was tainted by his previous viewing of a photograph of the defendant.
3. Whether the trial court erred in denying a mistrial when the victim testified that the defendant was "on probation or something."
4. Whether the trial court improperly sentenced the defendant as a Range II offender and imposed consecutive sentences.

We have heard the parties' oral arguments, reviewed the record and the briefs, and studied the applicable law. We hold that the defendant's dual convictions of felony evading arrest and felony reckless endangerment may violate double jeopardy principles, but we are unable to resolve the question due to error in the felony evading arrest judgment which is equivocal about whether the

---

[1]Tenn. Code Ann. § 39-13-403 (1997). Aggravated burglary is a Class C felony. Id.

[2]Tenn. Code Ann. § 39-14-103 (1997). Theft of property valued over $500 is a Class E felony. Tenn. Code Ann. § 39-14-105(2) (1997).

[3]Tenn. Code Ann. § 39-13-103 (1997). Reckless endangerment committed with a deadly weapon is a Class E felony. Id.

[4]Tenn. Code Ann. § 55-8-152 (Supp. 1996) (amended 1998, 2000). Speeding as committed by the defendant is a Class C misdemeanor. See id. at (f)(2).

[5]Tenn. Code Ann. § 39-16-603 (1997). Evading arrest while operating a motor vehicle is a Class E felony, but if the flight or attempt to elude also creates a risk of death or injury to others, it is a Class D felony. Id. As discussed in section V.C.3., it is unclear whether the defendant was convicted of Class E or Class D felony evading arrest.

[6]Tenn. Code Ann. § 55-10-616 (1998). Violation of an habitual motor vehicle offender order is a Class E felony. Id.

[7]Tenn. Code Ann. § 39-14-103 (1997). Theft of property valued at $10,000 or more but less than $60,000 is a Class C felony. Tenn. Code Ann. § 39-14-105(4) (1997).

defendant was convicted of the Class D or Class E version of that offense. We therefore remand the matter for entry of a proper judgment on the evading arrest count and, if the proper conviction is Class D evading arrest, for merger with the felony reckless endangerment conviction. We also discern error in the judgment form for theft over $10,000 and possible error in the speeding judgment form and remand for correction of clerical errors in those judgments, as well. On all other issues, we hold that there is no error of law requiring reversal and affirm the judgment of the trial court.

In the light most favorable to the state, the evidence at trial demonstrated the following. On December 22, 1996, the defendant and Jimmy Burklin Blankenship, who were previously acquainted, encountered one another while bar-hopping in Bristol. Both men were interested in finding female companionship, and apparently the opportunities for that endeavor were limited in the bars in Bristol. The defendant wanted to go to Johnson City, where the opportunities might be more plentiful. Blankenship agreed to go, and the two departed in Blankenship's 1996 Ford Thunderbird.

Once in Johnson City, the defendant and Blankenship went to a nightclub, where they met two women, Sherrie and Linda. After dancing and socializing for a few hours, the foursome discussed going to the Broadway Motel or to Perkins Restaurant and left the club. Once outside, the defendant told Blankenship that he needed to get his jacket out of Blankenship's car, and Blankenship gave the defendant his keys. The defendant told Linda to wait while he retrieved his jacket. Without explanation, the defendant then drove away in Blankenship's Thunderbird. Blankenship specifically denied that the defendant had asked for or that he had given the defendant permission to drive the Thunderbird. At first, Blankenship gave the defendant the benefit of the doubt and waited for him at Perkins Restaurant. He later took a taxi back to one of the Bristol nightclubs where he had met the defendant earlier that evening. Eventually, Blankenship lost faith and called Robin Cullop, the defendant's sister, to pick him up. Blankenship called the authorities and alerted them to the stolen vehicle.

That same evening, Highway Patrol Trooper Paul Mooneyham was clocking traffic with a radar device on Interstate 181. He clocked a 1996 Thunderbird at 82 miles per hour in a 65 miles per hour zone and pursued the vehicle. The vehicle would not yield, even after Trooper Mooneyham activated his emergency equipment. The vehicle slowed and exited the interstate, and Mooneyham continued to follow. The Thunderbird accelerated and was "all over the roadway," going from one lane to the other of the divided highway and onto the shoulder. At one point, the Thunderbird nearly struck a bridge but swerved to miss it. Trooper Mooneyham testified that the defendant reached speeds up to 120 miles per hour, and he was very concerned about the danger posed to others on the roadway from the speed and movements of the vehicle. At one point, the defendant entered a curve, and the Thunderbird spun around. Trooper Mooneyham came up to the vehicle in "t-bone" fashion and approached the driver's side on foot. He came within one to two feet of the Thunderbird and had a clear view of the defendant in the driver's seat. The defendant smiled at Trooper Mooneyham, and then he accelerated away. The chase resumed and was eventually joined by a deputy from Scott County, Virginia. Officer Mooneyham lost sight of the defendant for a time, then saw a Thunderbird parked with its lights off behind a business establishment. He

approached the car in a "t-bone" fashion on the passenger side, and again he saw the defendant seated inside. As Mooneyham was about to approach the defendant on foot, the defendant pulled away. At this point, Trooper Mooneyham discontinued the pursuit because he had seen the driver of the vehicle and the license tag number. He believed at this point that he could locate the owner of the vehicle and arrest him.

Thereafter, Trooper Mooneyham overheard a radio transmission that caused him to go to Robin Cullop's residence within an hour of terminating the chase. There, he encountered Mr. Blankenship, who had called authorities to report his vehicle stolen. Mooneyham immediately realized that Blankenship was not the individual he had seen driving the Thunderbird. He inquired whether Ms. Cullop had a photograph of her brother, and she allowed him to view one which depicted the defendant, a woman and a child. Trooper Mooneyham immediately recognized the man in the photograph as the driver of the Thunderbird.

After talking with Trooper Mooneyham and another officer who responded to Mr. Blankenship's theft report, Blankenship went with Mooneyham to report the theft to a Johnson City officer. Eventually, Blankenship went home and went to bed without looking around his house. The next morning when he awakened and went to his refrigerator, he discovered that its contents were missing. As he looked around his house, he noticed that a VCR, videocassettes, a rifle and scope, a gun cleaning kit, and a checkbook were missing. There were no signs of forced entry.

Blankenship's vehicle was recovered eight days later. He testified that it had been driven 1,500 to 2,000 miles and several items of personal property were missing which had been in the car when the defendant took it. Additionally, the checkbook that was taken from Blankenship's home was in the trunk.

Robin Cullop, the defendant's sister, testified that on the night in question she received a call from the defendant. He told her that he had taken Blankenship's car and asked her to tell Blankenship that he was sorry. Ms. Cullop also recalled that her brother said that he had been to Blankenship's house and that "he might have took [sic] some things that he shouldn't have" and that he was sorry.

The defense and the state stipulated that the defendant was an habitual motor vehicle offender on December 22, 1996.

To counter the state's proof, the defendant testified in his own behalf. Not surprisingly, his version of events sharply contrasted the evidence offered by the state. He claimed that he and Blankenship were drinking heavily on the evening in question. After leaving the Bristol bars, the two went to Blankenship's house, where they drank, Blankenship changed shirts, and the defendant ate a bologna sandwich. They departed for Johnson City, where they met two women with whom they danced and continued drinking. The defendant claimed that when they left the club, he did not want to go to the Broadway Motel, so Blankenship loaned the defendant his car. The defendant explained that he was anxious to get back to see his girlfriend. The defendant also

-4-

testified he was anxious to leave because he had recently learned that his son had been molested, and he wanted to drive by his ex-wife's home to see whether the alleged perpetrator's vehicle was parked outside. He claimed that as he was driving around, he ended up on the interstate because he needed to clear his head. He claimed that he "passed out" and did not know where he was when he first regained his composure. He explained that the reason for his failure to stop for Trooper Mooneyham was that "[he] was so erratic about [his] son." He denied having placed anyone on the road in danger. The defendant admitted that he knew he was operating the Thunderbird in violation of the habitual motor vehicle offender order against him.

He also claimed that he was going to return the Thunderbird until he became involved in the chase, but he became scared and instead abandoned the vehicle with the keys inside it. He then checked into a motel under a "felonious" name and called his sister so she could let Blankenship know where he might find his vehicle. The defendant claimed that in his conversation with his sister, he expressed his sorrow for having outrun the police in Blankenship's car and for Blankenship, who "didn't deserve none of that." He claimed that he might have mentioned that he and Blankenship had stopped by Blankenship's house on the way to Johnson City; however, he denied having said anything about taking property from Blankenship's house.

Although the defendant admitted that he had been involved in the chase with Trooper Mooneyham, he flatly denied taking Blankenship's car without permission. Likewise, he was adamant that he had been to Blankenship's residence only once that evening – when he was in Blankenship's presence. The only thing he took was a bologna sandwich. The defendant claimed that he thought more of Blankenship than to steal from his home.

The defendant acknowledged that he was on escape status with the Department of Correction on December 22, 1996; however, he claimed that fact never crossed his mind during his flight from Trooper Mooneyham.

After receiving this evidence, the jury found the defendant guilty of the aggravated burglary of Blankenship's home, theft of property from Blankenship's home valued over $500, felony reckless endangerment, speeding, felony evading arrest, violation of an habitual motor vehicle offender order, and theft of property valued at $10,000 or more for the theft of Blankenship's Thunderbird. At a subsequent sentencing hearing, the trial court imposed an effective fourteen-year sentence for the defendant's crimes, to be served consecutively to a seven-year sentence the defendant was already serving. The defendant then brought this appeal.

**I**

The first issue before us is the sufficiency of the convicting evidence for the aggravated burglary, reckless endangerment, and two theft convictions. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,

324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds, State v. Hooper 29 S.W.3d 1 (Tenn. 2000). On appeal, the defendant no longer enjoys the presumption of innocence and therefore has the burden of demonstrating that the evidence is insufficient to support the conviction. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

## A.    Aggravated Burglary and Theft

Essentially, the defendant's argument relative to the aggravated burglary and theft convictions is that this court should reweigh the evidence and accredit the defendant's testimony over that of the state's witnesses. As the authorities cited above indicate, however, questions of witness credibility, weight and value of the evidence, and factual determinations are the province of the trier of fact, and we may not substitute our own judgment upon appellate review. To be sure, the evidence adduced at trial, viewed in the light most favorable to the state, supports the jury's determination of guilt for the aggravated burglary and theft offenses. Mr. Blankenship testified that he saw the defendant take his car without permission. Likewise, Blankenship testified that items were missing from his home, and there was no sign of forced entry. One of the items of personal property taken from Blankenship's home was found inside Blankenship's car when it was recovered. Moreover, the defendant admitted the crime to his sister.

## B.    Reckless Endangerment

In the remainder of his sufficiency challenge, the defendant claims that the same facts underlie his reckless endangerment and evading arrest convictions, and he cannot be convicted of both. The defendant cites absolutely no authority in his cursory argument. For this reason, consideration of this aspect of his sufficiency challenge as a matter of right is waived. See Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b). Accordingly, we may consider the issue only if it rises to the level of plain error. See Tenn. R. Crim. P. 52(b).

**II**

Even though the defendant has waived his sufficiency claim set forth in I. B. above, we must now determine whether the claim suggests a violation of double jeopardy principles that should be noticed as plain error. See Tenn. R. Crim. P. 52(b). In analyzing the issue as one of potential plain error, we perceive it as a question of double jeopardy, rather than sufficiency of evidence.

In conducting a review under double jeopardy principles, we are substantially frustrated by the record's failure to reveal whether the defendant's evading arrest conviction was for the Class D or Class E felony version of that offense. See infra V.C.3. Therefore, we have compared the reckless endangerment conviction to both felony versions of evading arrest.

The state and federal constitutions protect against multiple convictions or punishments for a single offense. U.S. Const. amend. V; Tenn. Const. art. 1, § 10. In order for offenses to support multiple convictions, they must be "wholly separate and distinct." See, e.g., State v. Goins, 705 S.W.2d 648, 650 (Tenn. 1986). In State v. Denton, our supreme court recognized that "the key issue in multiple punishment cases is legislative intent." Denton, 938 S.W.2d 373, 379 (Tenn. 1996). In other words, the court must determine whether the legislature intended that each violation resulting from a single act be a separate offense. Presumptively, "the legislature does not ordinarily intend to punish the same offense under two different statutes." Id. at 379.

The Denton court employed a four-part balancing inquiry in determining whether multiple convictions offend double jeopardy. Id. at 379-81. First, the court must determine, in accord with Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180 (1932), whether each offense requires proof of an element that the other does not. Denton, 938 S.W.2d at 379. Second, the court must look to the specific evidence offered in the case at bar to determine whether different evidence was used to prove each offense. Id. at 380 (relying on Duchac v. State, 505 S.W.2d 237 (Tenn. 1973)). Third, the court must consider whether there were multiple victims or multiple episodes. Id. at 381. Fourth, the court must examine the purposes of the respective statutes prohibiting the defendant's conduct and determine whether the statutes serve different purposes. Id. at 381. None of these four inquiries is determinative; rather, the court must conduct a balancing test of each factor in relation to each other. Id. at 381.

## A.    Reckless Endangerment and Class D Felony Evading Arrest

We begin with the Blockburger inquiry. Class E felony reckless endangerment is "recklessly engag[ing] in conduct which places or may place another person in imminent danger of death or serious bodily injury . . . committed with a deadly weapon." Tenn. Code Ann. § 39-13-103 (1997). Class D felony evading arrest is committed while "operating a motor vehicle on any street, road, alley or highway in this state, [and] intentionally flee[ing] or attempt[ing] to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop . . . [and] the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties . . . ." Tenn. Code Ann. § 39-16-603(b) (1997). Reckless endangerment requires a

deadly weapon, while evading arrest requires a motor vehicle.[8]  Moreover, evading arrest requires flight or an attempt to elude a law enforcement officer upon a signal to stop.  Thus, there is not an identity of elements, and the offenses pass Blockburger scrutiny.

Next, we consider the evidence that the state used to prove the offenses.  Both offenses were established by proof of the same course of conduct – the defendant's high-speed flight from Trooper Mooneyham, during which he exhibited erratic driving that endangered other drivers.

Third, we note that there were not multiple victims or multiple episodes. While there was evidence that there were multiple other drivers on the road, the charging instrument and the proof centered on others generally, as opposed to specific, different individuals who were placed at risk by the defendant's conduct.  Further, the chase was one continuous episode of criminal conduct, rather than discrete acts which are readily capable of separation into multiple offenses. See State v. Ramsey, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995) (typically, only one offense arises from the continuous operation of a motor vehicle constituting reckless endangerment).

Finally, the purposes of the reckless endangerment and felony evading arrest statutes are the same.  Both seek to deter reckless conduct which creates a risk of death or injury to third parties.  Cf. State v. Kerry D. Garfinkle, No. 01C01-9611-CC-00484, slip op. at 8 (Tenn. Crim. App., Nashville, Nov. 7, 1997) (purposes of felony evading arrest and reckless driving statutes are the same in that both punish those whose reckless driving creates a risk of death or injury to third persons).

Upon consideration of these factors, we conclude that if the defendant was convicted of the Class D version of felony evading arrest, double jeopardy bars dual convictions of this offense and felony reckless endangerment.  Cf. State v. Jason Eric Bradburn, No. 01C01-9712-CC-00568, slip op. at 11-12 (Tenn. Crim. App., Nashville, Aug. 19, 1999) (double jeopardy bars dual convictions of Class D evading arrest and reckless driving); Kerry Garfinkle, slip op. at 8-9 (same). In this event, plain error is noticed.

**B.     Felony Reckless Endangerment and Class E Felony Evading Arrest**

We again begin with the Blockburger inquiry.  Felony reckless endangerment is "recklessly engag[ing] in conduct which places or may place another person in imminent danger of death or serious bodily injury . . . committed with a deadly weapon." Tenn. Code Ann. § 39-13-103 (1997).  Class E felony evading arrest is committed while "operating a motor vehicle on any street, road, alley or highway in this state, [and] intentionally flee[ing] or attempt[ing] to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a

---

[8]There is authority for the proposition that a motor vehicle may be considered a deadly weapon. See, e.g., State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995).  However, "An automobile is not, under all circumstances, a deadly weapon; the method of use is the controlling factor that must be examined on a case-by-case basis." State v. Brandon Patrick, No. 03C01-9710-CC-00548, slip op. at 4 (Tenn. Crim. App., Knoxville, Feb. 19, 1999).

stop." Tenn. Code Ann. § 39-16-603(b) (1997). Reckless endangerment requires a deadly weapon, while evading arrest requires a motor vehicle. Evading arrest requires flight or an attempt to elude a law enforcement officer upon a signal to stop. Again, there is no identity of elements, and the offenses pass <u>Blockburger</u> scrutiny.

We turn next to the evidence used by the state to make out the offenses. The offenses now under scrutiny were established to some extent by proof of the same course of conduct – the defendant's high-speed flight from Trooper Mooneyham, during which he exhibited erratic driving which endangered other drivers. However, proof that the defendant endangered other drivers was not necessary to make out the offense of Class E evading arrest. Thus, different evidence was used, at least to some extent, to make out the two offenses.

Third, we consider whether there were multiple victims or multiple episodes. Class E evading arrest does not have a "victim" *per se*, while the "victims" of the defendant's reckless endangerment offense were multiple other drivers on the road. As for multiple episodes, the chase giving rise to both offenses was one continuous episode of criminal conduct, rather than discrete acts which are readily capable of separation into multiple offenses.

Finally, we consider the respective purposes of the reckless endangerment and Class E evading arrest statutes. As stated in section II. A. above, the purpose of the reckless endangerment statute is to deter reckless conduct which creates a risk of death or injury to third parties. However, we cannot say that the Class E evading arrest statute addresses the same concern. On its face, that statute addresses those who refuse to yield to a law enforcement officer who has given a signal for the defendant to stop his vehicle. In its Class E version, the statute does not address the risk to others from the defendant's conduct. We therefore conclude that felony reckless endangerment and Class E evading arrest do not have an identity of purpose.

Upon consideration of these factors, we conclude that if the defendant was convicted of the Class E version of felony evading arrest, double jeopardy does not bar dual convictions of this offense and felony reckless endangerment. In this event, no plain error is noticed.

Because we cannot determine, as more fully discussed in section V.C.3. below, whether the defendant was convicted of Class D or Class E felony evading arrest, the matter must be remanded to the trial court for a determination of which version of evading arrest properly underlies the defendant's conviction. If the trial court determines that the defendant's evading arrest conviction is for the Class D version of the offense, we instruct as a matter of plain error that it shall merge the lesser conviction of felony reckless endangerment into the evading arrest conviction. <u>See</u> Tenn. R. Crim. P. 52(b); <u>State v. Brooks</u>, 909 S.W.2d 854, 863 (Tenn. Crim. App. 1995) (double jeopardy issue recognized as plain error even though technically waived by procedural default). If, on the other hand, the trial court determines that the defendant's evading arrest conviction is for the Class E version of the offense, both convictions may separately stand.

**III**

The defendant's next issue concerns Trooper Mooneyham's in-court identification of him as the driver of the Thunderbird. He claims that Mooneyham's viewing of the photograph provided by Robin Cullop shortly after the chase amounted to a showup and tainted the officer's in-court identification of the defendant.

A showup "occurs when 'a single person is presented as a suspect to a viewing eyewitness.'" State v. Richard Allen Thomas, No. 115, slip op. at 4, n.1 (Tenn. Crim. App., Knoxville, July 28, 1989), perm. app. denied (Tenn. 1989). While we acknowledge that showups are disfavored due to their inherent suggestiveness, we have serious reservations in equating Trooper Mooneyham's viewing of a photograph during the course of his investigative duties as a law enforcement officer with the more typical showup situation in which a law enforcement officer presents a single suspect or suspect's photograph to a victim or eyewitness for identification. In any event, we will endeavor to consider whether the procedure employed was unduly suggestive.

"To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." State v. Cribbs, 967 S.W.2d 773, 794 (Tenn.) (citing Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967 (1968)), cert. denied, — U.S. —, 119 S. Ct. 343 (1998). In Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), the Supreme Court identified five factors for assessing reliability of an identification. They are: (1) the opportunity of the witness to view the perpetrator at the time of the offense, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the identification. Id. at 199, 93 S. Ct. at 382.

Under the Neil v. Biggers inquiry, Trooper Mooneyham's initial identification of the defendant as the driver of the Thunderbird was not based upon an impermissibly suggestive procedure and therefore did not taint his in-court identification of the defendant. Mooneyham testified that he had the opportunity to view the driver of the Thunderbird on two occasions for two to three seconds each time. On one occasion Mooneyham came within one to two feet of the driver's side of the vehicle in which the suspect was seated. His view was unobstructed and well-lit. His attention was focused on the suspect. Although there was no evidence about any description Mooneyham may have given other officers of the suspect, he expressed great certainty in his identification of the defendant as the driver.

Moreover, the time between termination of the chase and Mooneyham's viewing of the photograph of the defendant was less than an hour. Finally, Mooneyham testified that his in-court identification of the defendant was based upon his observations at the scene, and his previous viewing of a photograph of the defendant had been of value only in the investigative process in helping him connect the defendant's name with the face he saw during the chase. Based upon these facts, we have no hesitation in concluding that there was no taint in Trooper Mooneyham's in-court identification of the defendant as the driver of the Thunderbird, and hence, the perpetrator of the crimes on trial.

-10-

**IV**

The defendant also complains that the trial court erroneously denied his motion for a mistrial after Mr. Blankenship testified that the defendant was "on probation or something." When the witness made this statement, defense counsel objected, and the court instructed the jury to disregard the statement.

The entry of a mistrial is appropriate when the trial cannot continue for some reason, or if the trial does continue, a miscarriage of justice will occur. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial is within the sound discretion of the trial court, and this court will not disturb the trial court's determination unless a clear abuse of discretion appears on the record. Id.

In the present case, the witness's mention of the defendant being "on probation or something" was spontaneous and not solicited via improper questioning by the prosecution. It was relatively innocuous, particularly given the conclusiveness with which the state ultimately established the defendant's guilt. The trial court properly instructed the jury to disregard the statement. We presume that the jury followed these instructions. See, e.g., State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990) (the jury is presumed to follow the instructions given it by the trial court).

In this situation, we see no abuse of discretion in the trial court's denial of the motion for mistrial. See, e.g., State v. David T. Jones, No. 01C01-9710-CC-00445, slip op. at 3-4 (Tenn. Crim. App., Nashville, Dec. 21, 1998) (no abuse of discretion to deny motion for mistrial based upon testimony that defendant "had just got [sic] out of jail" where testimony was unsolicited by state, immediate curative instruction given, and evidence of guilt was overwhelming); State v. Hall, 947 S.W.2d 181, 184 (Tenn. Crim App. 1997) (trial court did not err in denying motion for mistrial where victim testified that defendant had previously been in the workhouse, after which curative instruction was given); State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996) (in view of the strength of convicting evidence, trial court did not err in denying motion for mistrial following testimony that defendant had a "prior charge," even though no curative instruction was given).

**V**

Finally, we reach the defendant's sentencing complaints. He alleges that he was improperly classified as a Range II offender because the state did not properly supply him with notice of its intent to seek enhanced range classification and that the trial court erred in ordering consecutive sentences.

**A. Notice**

First, the defendant argues that he cannot be classified above Range I because the state failed to give adequate notice that it was seeking enhanced punishment via Range II classification.

At the sentencing hearing, the following exchange occurred between the court and defense counsel.

| | |
|---|---|
| The Court: | So, it appears the State has submitted to the court three prior felony convictions, occurring on different dates . . . . So, it appears he will be a Range Two, multiple offender, and [defense counsel], . . . do you wish to make any comment, objection or statement about that? |
| Defense Counsel: | No, Your Honor. |

Thus, the defendant specifically stated no objection to Range II classification at the time of sentencing. Furthermore, the defendant raised sentencing issues in his motion for new trial but did not include the allegedly erroneous range classification in his allegations of error. This court is loath to place a trial court in error when the party complaining on appeal failed to take corrective action with respect to any error which allegedly occurred below, and we are particularly loath to do so where the complaining party affirmatively acquiesced in the trial court's action. See Tenn. R. App. P. 36(a). This issue is waived.

In any event, there appears in the record a notice filed by the state captioned "Notice of Intent to Use Criminal History and Evidence of Prior Bad Acts." The body of the notice lists five prior convictions. A "Supplemental Notice of Intent to Use Criminal History and Evidence of Prior Bad Acts" listing an additional "bad act" apparently not resulting in a conviction also appears in the appellate record. These pleadings recite that the state intends to utilize the criminal history listed "for enhancement of punishment, impeachment, cross-examination, evidence of prior bad acts and any and all other purposes allowed under current law." Thus, the defendant was on notice of potential Range II punishment.

It has not gone unnoticed by this court that the defendant argued in his brief, "There is no written notice in the record," and, "By failing to file any notice at all, the State has failed to comply with the statutory requirements to have Mr. Cullop declared a multiple offender." When the defendant filed his brief, the "Notice of Intent to Use Criminal History and Evidence or Prior Bad Acts" and the "Supplemental Notice of Intent to Use Criminal History and Evidence of Prior Bad Acts" were not contained in the appellate record, and the defendant's brief was silent as to the existence of these documents. After the defendant's brief was filed, the state discerned the omission of the pertinent documents from the record and filed a motion to supplement, which we granted. We commend the state for bringing this omission to our attention, and we remind defense counsel of the obligation to know the contents of the trial court record.

## B. Consecutive Sentencing

Finally, the defendant claims that he was improperly given consecutive sentences because the trial court failed to make the findings mandated by State v. Wilkerson.

In the case at bar, the trial court sentenced the defendant as follows:

**S40-257**
Count 1 - Class D felony reckless endangerment - three years, $3,000 fine
Count 2 - speeding - 30 days, $50 fine
Count 3 - felony evading arrest - three years, $5,000 fine
Count 4 - violation of HMVO order - three years, $3,000 fine
Count 5 - theft over $10,000 - six years, $1,000 fine

Sentences within S 40-257 are concurrent to each other, Count 5 is consecutive to Count 1 of S40-256, for an effective fourteen-year sentence consecutive to defendant's previous, unrelated sentence.

**S40-256**
Count 1 - aggravated burglary - eight years, no fine
Count 2 - theft over $500 - three years, no fine

Sentences within S40-256 are concurrent to each other, Count 1 is consecutive to Count 5 of S40-257, for an effective fourteen-year sentence consecutive to defendant's previous, unrelated sentence.

The Sentencing Reform Act provides that consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria exist:

(1)     The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
(2)     The defendant is an offender whose record of criminal activity is extensive;
(3)     The defendant is a dangerous and mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of

the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997). In State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing under the dangerous offender category -- the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. See State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In this case, the court made two findings relative to the section 40-35-115(b) factors for consecutive sentencing. The court found that the nature of the offense was a proper consideration in applying factor (4), the dangerous offender category, to the defendant's reckless endangerment conviction. The court also found that factor (2), the extensive criminal history category, applied to all the felony convictions.

We consider first whether defendant qualified for consecutive sentencing as an offender with an extensive history of criminal activity under section 40-35-115(b)(2). The record indeed supports that determination. The defendant's history of criminal activity is prodigious and extends well beyond the crimes used to qualify him for Range II classification. Moreover, there was no requirement that the court make the Wilkerson findings for this consecutive sentencing category. See Lane, 3 S.W.3d at 461. This was a proper basis for consecutive sentencing.

Because we so hold, it is unnecessary for us to consider whether the defendant was also a dangerous offender and whether the trial court made adequate Wilkerson findings.

## C. Errors in Judgment Forms

Finally, upon review of the judgment forms, we note several anomalies.

## 1. Theft over $10,000

First, the judgment form for the theft over $10,000 conviction reflects consecutive service with Counts One through Four of S40-257. This is contrary to the trial court's order at the sentencing hearing that all sentences within S40-257 would be imposed concurrent to each other. When there is a conflict between the transcript and the judgment form, the transcript controls. See, e.g., State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Thus, this matter must be remanded for correction of the judgment form for Count 5 of S40,527, theft over $10,000.

## 2. Speeding

-14-

Additionally, the judgment form for the speeding conviction reflects concurrent service with "S38,256." Due to the similarity of this number to both the defendant's prior convictions and the other charge presently before the court, it is not clear whether this is a clerical error. On remand, the trial court will amend its judgment if necessary to reflect the proper case number for concurrent service.

### 3.      Felony Evading Arrest

Finally, the judgment form for felony evading arrest reflects that the defendant was convicted of the Class E felony version of this offense, rather than the Class D felony version. Nevertheless, the $5,000 fine imposed is the maximum for the Class D version of the offense, whereas the maximum fine for the Class E version of the offense is only $3,000. Compare Tenn. Code Ann. § 40-35-111(b)(4) (1997) (Class D felony punishment) with Tenn. Code Ann. § 40-35-111(b)(5) (1997) (Class E felony punishment). Moreover, the Range II sentence of three years is an appropriate Class E sentence, but it is below the Class D minimum for a Range II offender. Compare Tenn. Code Ann. § 40-35-112(b)(5) (1997) (Range II, Class E sentence is two to four years) with Tenn. Code Ann. § 40-35-112(b)(4) (1997) (Range II, Class D sentence is four to eight years). At best, this judgment contains a clerical error, and at worst, it is illegal. Either way, it is correctable. See Tenn. R. Crim. P. 36 (clerical mistakes in judgments are correctable at any time); McConnell v. State, 12 S.W.3d 795, 797-98 (Tenn. 2000) (a sentence which is outside the statutorily authorized punishment for a crime is illegal and may be corrected at any time).

Upon discerning this error, we reviewed the record for an indication whether the defendant was convicted of Class D evading arrest or Class E evading arrest. The record, however, is not definitive. The indictment charges the Class D version of the offense. The court instructed the jury on the Class D offense as well as the lesser-included Class E offense. When the verdict was returned, the court inquired about "the principle [sic] offense of Felony Evading Arrest" and the jury foreperson announced a guilty verdict and a fine of $5,000. The court did not inquire which version of felony evading arrest was found by the jury. Then, at sentencing, the court announced that the defendant was found guilty of "Felony Evading Arrest, a Class E felony" but imposed a Range II, Class E sentence of three years along with a Class D fine of $5,000.

We are therefore left with no alternative but to remand to the trial court for a determination of which felony version of evading arrest is proper given the jury's verdict and for entry of a judgment which complies with the dictates of the sentencing statutes.

In conclusion, we remand to the trial court for the following. The judgment form for theft over $10,000, Count 5 of S40-257, shall be corrected as described above. The court shall review the speeding judgment form, Count 2 of S40-257, and correct any clerical errors which appear as discussed above. For the evading arrest conviction, Count 3 of S40-257, the trial court shall determine whether the defendant's conviction is of the Class D or Class E version of the offense and enter a judgment of the proper offense which is consistent with the provisions of the Sentencing Reform Act of 1989. If the proper offense is Class D evading arrest, the trial court shall

merge the conviction with the felony reckless endangerment conviction for the reasons stated herein. In all other respects, the judgment of the trial court is affirmed.


_____
JAMES CURWOOD WITT, JR., JUDGE