# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 18, 2016 Session

## JEREME DANNUEL LITTLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 291007   Rebecca June Stern, Judge**

---

### No. E2015-01190-CCA-R3-PC – Filed August 19, 2016

---

Following an evidentiary hearing, the Hamilton County Criminal Court granted the Petitioner, Jereme Dannuel Little, post-conviction relief and vacated his conviction for especially aggravated kidnapping.  On appeal, the State contends that the post-conviction court erred by concluding that the Petitioner received ineffective assistance of counsel based on counsel's (1) failure to seek a severance of two counts of aggravated robbery from the especially aggravated kidnapping charge, either pre-trial or after judgments of acquittal were granted on the aggravated robbery charges; (2) failure to interview witnesses from the store where the victim was allegedly kidnapped; and (3) decision to call a witness to testify without first adequately interviewing that witness.  Following our review, we reverse the judgment of the post-conviction court and reinstate the Petitioner's conviction for especially aggravated kidnapping.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; John H. Bledsoe, Senior Counsel; M. Neal Pinkston, District Attorney General; and Kristen Drew Spires, Assistant District Attorney General, for the appellant, State of Tennessee.

Lloyd A. Levitt, Chattanooga, Tennessee, for the appellee, Jereme Dannuel Little.

# OPINION

## FACTUAL BACKGROUND[1]

### *I. Trial*

Following a jury trial, the Petitioner was convicted of one count of especially aggravated kidnapping, for which he received an eighteen-year sentence. The Petitioner had initially been charged with two counts of aggravated robbery in addition to the especially aggravated kidnapping charge, and these three counts were tried together in April 2008. His conviction was upheld on appeal by both this court and our supreme court. See State v. Little, 402 S.W.3d 202 (Tenn. 2013); State v. Jereme Dannuel Little, No. E2009-01796-CCA-R3-CD, 2012 WL 8718 (Tenn. Crim. App. Jan. 3, 2012), aff'd.

The Petitioner's conviction arose from the July 10, 1998 robbery at the home of Chris Rogers. Little, 402 S.W.3d at 204. The robbery remained unsolved for the next seven years. In September 2004, Detective Bill Phillips of the Chattanooga Police Department received a phone call from a confidential informant, which prompted him to re-investigate the 1998 robbery. Detective Phillips interviewed Mr. Rogers and determined that the information provided by the confidential informant was consistent with the original incident report. Id. at 204-05.

Detective Phillips interviewed Demetrius Grayson in early 2005, and Grayson confessed to the robbery and implicated the Petitioner as his accomplice. Little, 402 S.W.3d at 205. Additionally, Grayson told Detective Phillips that the Petitioner had kidnapped and tortured him after the robbery. Thereafter, the Petitioner was charged with two counts of aggravated robbery stemming from the robbery of the Rogers residence and one count of especially aggravated kidnapping of Grayson. Id.

Mr. Rogers testified that on July 10, 1998, at approximately 1:00 a.m., a man knocked on his door and asked to speak with his son, Bruce Jackson. Little, 402 S.W.3d at 205. Two men then entered Mr. Rogers' home, demanding "'the dope and the money.'" After Mr. Rogers informed the men that he did not have drugs or money, the men searched the house. One man held Mr. Rogers at gunpoint while the other took jewelry and other items from a dresser in the bedroom. The men forced Mr. Rogers to lie down in the bathtub, and Mr. Jackson was ordered to lie next to the bathtub for ten to

---

[1] This section is intended to provide a factual overview of the Petitioner's case. In the analysis section of this opinion, we recount additional facts from the direct appeal record that were not included in the previous opinions of this court and our supreme court but which are germane to the issues presented in this appeal.

fifteen minutes.  The two men left, and Mr. Rogers called 911.  Mr. Rogers was unable to identify either of the robbers.  Id.

Mr. Jackson also testified and identified Grayson as the man who had knocked on Mr. Rogers's door.  Little, 402 S.W.3d at 205.  However, Mr. Jackson was unable to identify the Petitioner as the second robber, although he had known the Petitioner as a child.  Additionally, Mr. Jackson opined that the Petitioner was not the second robber because his body type and tone of voice did not match that of the robber.  Id.

Grayson testified at trial that it was the Petitioner's idea to rob the Rogers residence because he thought it was a "'dope house.'"  Little, 402 S.W.3d at 205.  Grayson's account of the robbery was substantially the same as recounted by Mr. Jackson and Mr. Rogers.  According to Grayson, during the course of the robbery, he became concerned that the Petitioner was going to kill one or both of the victims, and Grayson wanted no "'part of a murder, if there was going to be one.'"  Id. at 205-06.

Grayson fled the scene, discarding his gun during his flight.  Little, 402 S.W.3d at 206.  He ran to a grocery store in East Chattanooga, where "he encountered the [Petitioner], who called out from his car, threatening to shoot Grayson if he tried to run."  Grayson submitted to this threat, and the Petitioner drove him to "'a crack house.'"  According to Grayson, the Petitioner tied him to a chair and tortured him for several hours, asking him why he had fled from the robbery.  Grayson further testified that the Petitioner forced him to smoke crack cocaine and eat dog feces.  Grayson claimed that after a couple of hours, he was able to escape from the house via a window.  Id.

On cross-examination, Grayson testified that the house he was taken to by the Petitioner was rented by Lewis and Gabriel Buchanan.  Little, 402 S.W.3d at 206.  Grayson said that he, the Petitioner, the Buchanans, and "'a few other guys'" stayed at the house intermittently and that they used the house to deal crack cocaine.  Grayson testified that the Buchanans were in the house while the Petitioner had him tied up and was torturing him and that there were other people "walking in and out" of the house, although no one offered him any assistance.  Id.

Kelvin Ellison was interviewed by Detective Phillips in 2005, and he told Detective Phillips that he had visited the Buchanans' house in the summer of 1998 and saw a "'dude . . . getting whooped.'"  Little, 402 S.W.3d at 206.  At trial, he identified the "dude" as Grayson.  In the interview, which was played for the jury, Mr. Ellison said that "they" were beating Grayson and "'had the dog . . . stuff.'"  Mr. Ellison told Detective Phillips that the Petitioner was in the room where Grayson was tied up and was responsible for the assault.  Further, he related that Grayson had dog feces around his mouth and on his clothes.  He said that, to his knowledge, the reason for the beating was related to money or someone running off with something.  Mr. Ellison gave this same

-3-

account at trial. He additionally testified that the Petitioner had "complained loudly about 'people running off on him and messing him over.'" Id.

Terna Hatten, a defense witness, testified that he had previously been incarcerated with Mr. Ellison. Little, 402 S.W.3d at 207. According to Mr. Hatten, Mr. Ellison approached him in jail and asked him to testify falsely against the Petitioner. Specifically, Mr. Ellison requested that Mr. Hatten testify that the Petitioner had "'robbed [Grayson] and kidnapped him and supposedly made him eat dog doo doo or some old thing like that.'" Mr. Hatten alleged that during this same conversation, Mr. Ellison admitted that someone named "Two-Hype," later identified as Lewis Buchanan, was actually responsible for the kidnapping. According to Mr. Hatten, he told Mr. Ellison that he would consider cooperating, but he ultimately did not do so because he did not want to lie or send someone to prison for something the Petitioner did not do. Id.

Lesley Allen,[2] Grayson's cousin, was also called as a defense witness. Little, 402 S.W.3d at 207. Mr. Allen testified that he learned about the kidnapping from Grayson, who told him that Two-Hype had kidnapped him, taken him to a house, and forced him to smoke crack cocaine and eat dog feces. On cross-examination, Mr. Allen testified that he had been placed in a cell in an area near the Petitioner while both men were incarcerated. The State asked Mr. Allen whether he had previously told law enforcement officers that the Petitioner told him that he had beat Grayson and forced him to smoke crack cocaine and eat dog feces, but Mr. Allen insisted that Grayson told him that Two-Hype was responsible. Id.

Johnny Carter testified for the defense that he lived at a house with the Buchanans and Grayson during the summer of 1998. Little, 402 S.W.3d at 207. According to Mr. Carter, he would have been surprised to see the Petitioner at the house because he was not "'from that side of town.'" He further stated that he had overheard the Buchanans and Grayson discussing their desire to kill the Petitioner. Mr. Carter testified that Grayson and the Buchanans had a "heated argument" that summer after Grayson stole three ounces of crack cocaine from them. Mr. Carter said that he left the house and did not witness the assault on Grayson, but he speculated that the Buchanans carried out the attack. Id.

The Petitioner testified and denied participating in the robbery and kidnapping. Little, 402 S.W.3d at 208. The Petitioner said that he had never been to the Buchanans' house. According to the Petitioner, the Buchanans and Grayson "wanted to kill him because he wore 'the wrong color [shirt] in the wrong place,'" based on their separate

---

[2] Mr. Allen's first name is spelled different ways throughout the record. We adopt the spelling utilized by this court and our supreme court on direct appeal.

-4-

neighborhoods and gang affiliations. The Petitioner said that he was from south Chattanooga and that if he had gone to east Chattanooga and committed the crimes he was accused of, "the Buchanan brothers . . . would have killed [him] or members of his family." Id.

At the conclusion of this proof, the Petitioner moved for judgments of acquittal on the robbery charges based on uncorroborated accomplice testimony, which the trial court granted. Little, 402 S.W.3d at 208. The State indicated that it still wished to refer to the robbery evidence during its closing argument because it had led to the kidnapping. Defense counsel objected, but the court overruled the objection, allowed the State to reference the robbery during closing, and instructed defense counsel to refrain from mentioning the acquittals. Id.

## II. Post-Conviction Proceedings

On March 10, 2014, the Petitioner filed a timely petition for post-conviction relief with the assistance of counsel, wherein he alleged that he received ineffective assistance of counsel during his trial. The Petitioner asserted that trial counsel was ineffective (1) for failing to request a severance of the aggravated robbery counts from the especially aggravated kidnapping count, both prior to trial and subsequent to the trial court's grant of the motion for judgments of acquittal; (2) for failing to move to strike the evidence related to the robbery after the judgments of acquittal were granted; (3) failing to request a jury instruction limiting consideration of the robbery evidence as motive for the kidnapping; (4) for calling Mr. Allen as a witness, whom he had insufficiently interviewed and whose testimony was "extremely damaging"; (5) for failing to retain an expert in federal sentencing law "to clarify extremely confusing testimony relating to the consequences of [Mr.] Ellison's cooperation at tr[ia]l"; (6) for calling Mr. Carter as a witness; (7) for failing to adequately cross-examine Grayson about his criminal record; (8) for failing to "discredit State claims that . . . Grayson [was] retarded"; (9) for failing "to adequately argue the ongoing confusion about the address where the [kidnapping] was supposed to have occurred"; (10) for failing to "investigate claims that . . . Grayson went to Sandy's Mini Mart at 1 a.m."; and (11) for failing to "point out" that Grayson "did not seek any medical attention or call the police after claiming that he had been tortured for hours."

At the evidentiary hearing, the Petitioner testified that he and trial counsel never discussed a motion to sever the offenses prior to trial. However, according to the Petitioner, after the trial concluded, trial counsel expressed his opinion that a motion to sever should have been filed.

The Petitioner said that trial counsel found Mr. Allen's name when looking through a "detective's folders or file after [the detective] left the stand . . . ." Trial

counsel asked the Petitioner whether he knew Mr. Allen, and the Petitioner said that he did not. The Petitioner testified that trial counsel called Mr. Allen to testify without adequately interviewing him. According to the Petitioner, the State then called a witness who significantly undermined Mr. Allen's testimony.

The Petitioner introduced a statement from Sandy Sirhan, who previously worked at Sandy's Mini Mart, where the Petitioner was alleged to have kidnapped Grayson. Both the Petitioner and the State stipulated that the statement reflected what her testimony would have been if called at trial. In the statement, Ms. Sirhan said that her mother owned "Sandy's Mini Mkt.," where she was working in July 1998. Ms. Sirhan stated that she worked from "noon or [1:00 p.m.] and worked until closing." Additionally an off-duty police officer worked each day from 6:00 p.m. until 12:00 a.m., when the store closed. According to Ms. Sirhan, the store "wouldn't stay open past 12:30 a.m." Ms. Sirhan also stated that Sandy's was "under investigation by the [United States] Marshall" from 1993 to 1999 and that a daily log book was kept during that time which reflected the time the store opened and closed each day.

The Petitioner testified that trial counsel never interviewed Ms. Sirhan, or anyone else from Sandy's, and that her testimony would have undermined Grayson's account of that night. The Petitioner said that, at trial, Grayson had testified that he was at Sandy's after 1:00 a.m. on the night of the kidnapping and that he was allowed into the store. The Petitioner further opined that Ms. Sirhan's testimony that an off-duty police officer was at the store would have called into question Grayson's claim that he was kidnapped there.

Trial counsel testified that he represented the Petitioner at his 2008 trial.[3] Trial counsel recalled that he requested judgments of acquittal on the aggravated robbery charges because there was "zero corroboration" of Grayson's account of the robbery. According to trial counsel, after the judgments of acquittal were granted, he did not request a severance because he "was so focused on" having "the jury informed of [the Petitioner's] judgments of acquittal . . . ." He continued that he "felt that it was appropriate the jury be advised of that[,] [b]ecause if there wasn't a basis for the underlying charge it would in effect take out the motive for [the Petitioner] to have committed the [especially aggravated kidnapping]." He said that this preoccupation resulted in his "not even think[ing] to ask for a severance of the charges."

In trial counsel's opinion, the evidence pertinent to the aggravated robbery charges was harmful to the Petitioner's case because the prosecutor "really focused on [the

---

[3] Trial counsel testified that the Petitioner initially went to trial on these charges in 2006, but that trial ended in a mistrial because counsel realized during trial that he had been provided with the incorrect location of the house where Grayson was taken during the kidnapping.

robbery]" during closing argument and, if the charges had been severed, "[the prosecutor] would have been limited or potentially even prohibited" from doing that. Trial counsel opined that if he had requested a severance of the robbery charges after the judgments of acquittal were granted, the robbery evidence would at least not have been accepted as substantive evidence. Trial counsel agreed that he also failed to move to strike the evidence of the aggravated robbery, which he said "should have all been in the similar motion to sever." Trial counsel testified that "in hindsight [he] always worried . . . or thought" that if the trial court had not granted the acquittals, the jury would have been instructed regarding accomplice testimony, and trial counsel could have argued that there was no reliable evidence that the Petitioner participated in the robbery and, therefore, no motive for the kidnapping.

Trial counsel testified that he "wish[ed] [he] could go back" and request that the robbery evidence be stricken and that he believed that severing the robbery evidence "would have eliminated the ability for [the prosecutor] to go on in closing [and] that [the Petitioner] would have had a better chance of being acquitted." Trial counsel characterized the prosecutor's reliance on the robbery evidence in closing argument as "pretty substantial."

On cross-examination, trial counsel admitted that the two aggravated robbery counts and the especially aggravated kidnapping were charged in separate indictments and that he consented to consolidating them because he thought joinder was mandatory because they were closely related. The trial counsel explained that, based on previous cases he had before the trial court, he "anticipated" that the court would not have granted a motion to sever.

According to trial counsel, he requested a jury instruction that the Petitioner had been acquitted of the aggravated robbery charges. Trial counsel said that if the trial court had given that instruction, his closing argument would have been that there was no proof of the robbery and no motive for the kidnapping. He continued, saying, "[T]he whole basis of the allegation on the kidnapping rested on the fact that [the Petitioner] was allegedly upset that [Grayson] ran out during the robbery and this was some sort of payback for that."

Trial counsel testified that he found Mr. Allen's name "after the close of the State's proof [when he] was provided . . . access to the detective's notes . . . ." Counsel recalled that Mr. Allen was in jail at the time, and counsel met with him in a "holding cell and spoke with him briefly." Based on that discussion, counsel "thought [Mr. Allen] would make a good witness." Trial counsel could not remember details of the conversation with Mr. Allen, but he estimated it lasted approximately five to ten minutes and that he found Mr. Allen to be credible.

On re-direct examination, trial counsel opined that Mr. Allen's testimony on "direct went beautifully" but that "cross went horribly." Specifically, trial counsel recalled that on cross-examination Mr. Allen was questioned about a proffer he made to federal authorities, which contained statements contrary to his trial testimony. Trial counsel said that he was not aware of this proffer at the time he called Mr. Allen as a witness and that he would not have called Mr. Allen had he known about it.

Following the conclusion of proof, the post-conviction court immediately granted the Petitioner post-conviction relief. The post-conviction court stated that in "[eighteen] years on the bench this was probably the messiest trial that [it had] ever sat through." The court found that trial counsel should have filed a motion to sever, although the court did not "know how [it] would have ruled given everything." The court said that the motion to sever should have been filed "pretrial, but certainly once the aggravated robber[ies] were dismissed."

Additionally, the post-conviction court found that "Lesl[ey] Allen, while he stuck to his story[,] he was a terrible witness for the [Petitioner]." The court concluded that if trial counsel "had time and put a little more thought into it," Mr. Allen would probably not have been called as a witness and that calling him "was a strategic error." The court concluded that trial counsel, "in these particular little ways," was ineffective and granted the petition for post-conviction relief.

Later, in a written order, the post-conviction court listed the following grounds as meriting post-conviction relief:

(1) [t]rial counsel was ineffective in that he failed to move, pre-trial[,] for severance of his [a]ggravated [r]obbery and [e]specially [a]ggravated [k]idnapping charges, because he assumed the [c]ourt would overrule such a motion; and

(2) [t]rial counsel was ineffective in that he failed to move for a severance of [the] Petitioner's [a]ggravated [r]obbery and [e]specially [a]ggravated [k]idnapping charges at the close of the State's proof and at the time the [c]ourt granted [the] Petitioner's Motion for Judgment of Acquittal on [his] [a]ggravated [r]obbery charges; and

(3) [t]rial counsel was ineffective in that he failed to interview witnesses at and around the convenience store where the victim of the [e]specially [a]ggravated [k]idnapping claimed he was kidnapped by [the] Petitioner; and

(4) [t]rial counsel was ineffective in calling as a defense witness, Lesley Allen, who[m] he had spoken with only briefly in a holding cell, prior to calling him into court as a defense witness and without investigating and discovering the fact that Lesley Allen had given contradictory and incriminating statements to police during the police investigation.

The post-conviction court did not include any additional factual findings in its order granting the petition and provided no analysis regarding its conclusion that trial counsel was ineffective. It is from this decision that the State now timely appeals.

## ANALYSIS

On appeal the State contends that the post-conviction court erred in granting the petition for post-conviction relief. Specifically, the State contends that the Petitioner has not shown that he was prejudiced by trial counsel's failure to file a motion for severance; by counsel's failure to interview Ms. Sirhan; or by counsel's decision to call Mr. Allen as a witness. The Petitioner responds that the post-conviction court properly concluded that he received ineffective assistance of counsel and that he was entitled to post-conviction relief.

### I. Standard of Review

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W. 2d 4, 9 (Tenn. 1982).

"Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## A. Failure to File Motions to Sever

On appeal, the State first challenges the post-conviction court's finding that trial counsel was ineffective for failing to file a motion to sever the aggravated robbery charges from the especially aggravated kidnapping charge both prior to trial and after judgments of acquittal were granted. The Petitioner disagrees, asserting that the post-conviction court properly granted relief.

In his brief, the Petitioner includes "sub-issues" that he states are "directly related to" the severance issue: whether trial counsel was ineffective in failing to move to strike evidence related to the robbery charges following the judgments of acquittal and whether trial counsel was ineffective for failing to request a jury instruction limiting consideration of the robbery evidence to show a motive for the kidnapping. However, we note that these sub-issues were listed as separate and distinct issues from the severance issue in the Petitioner's petition. Further, the post-conviction court did not discuss either a motion to strike or a limiting jury instruction when granting relief on the four specified grounds and clearly stated that the other grounds in the petition were without merit. Based on the

Petitioner's brief, he is not claiming that the post-conviction court erred in denying relief on the grounds related to a motion to strike and a limiting jury instruction but rather that they are subsumed by the severance issue. Although the fact that a motion to strike was not filed and a limiting instruction was not given may affect our overall analysis concerning the prejudicial impact of the failure to file a motion to sever, we decline to treat these as separate grounds of ineffective assistance of counsel because they have not been properly presented for our review. Accordingly, we limit our review of the severance issue to the way that it was presented in the lower court and petition.

### 1. Motion to Sever Following Judgments of Acquittal

First, we dispense with the issue regarding counsel's failure to file a motion to sever after the judgments of acquittal were granted. As our supreme court noted on direct appeal, the grant of judgments of acquittal on the robbery charges "essentially resulted in a severance of the offenses at that time." Little, 402 S.W.3d at 209. Further, because there was no explanation accompanying the court's grant of relief, we cannot discern why the court granted relief on this basis. Although at the evidentiary hearing trial counsel testified that the supreme court opinion stated that he should have moved for a severance following the acquittals, as the above passage indicates, that was not the case. The supreme court did note that trial counsel "'could have, and should have, moved to strike any evidence related to the robber[y].'" Id. at 210 (quoting Little, 2012 WL 8718, at *6) (alteration in original). However, as noted above, the post-conviction court denied relief on the ground relating to the failure to request a motion to strike, and the Petitioner has not challenged that ruling on appeal. Accordingly, this issue does not merit post-conviction relief, and the decision of the post-conviction court is reversed in this regard.

### 2. Pre-Trial Motion to Sever

Next, we consider the post-conviction court's grant of relief on the basis that trial counsel was deficient for failing to file a pre-trial motion to sever and that the Petitioner was prejudiced by this deficiency. In its brief, the State contests that trial counsel rendered deficient performance by failing to file a pretrial motion to sever; however, the State conceded at oral argument that counsel's performance was deficient. Nevertheless, the State posits that the Petitioner has not proven prejudice because proof of the robbery would have been introduced to prove motive at a trial for especially aggravated kidnapping even if the offenses had been severed. The State acknowledges that the prosecutor relied upon evidence relating to the robbery during closing argument but insists that the prosecutor was merely arguing that the robbery was motive for the kidnapping. The Petitioner disagrees and asks that we affirm the post-conviction court's grant of relief on this ground.

-11-

In order to prove prejudice based on counsel's failure to file a motion to sever, a petitioner must demonstrate that the motion would have been granted. See Robert Gentry Galbreath v. State, No. M2003-02807-CCA-R3-PC, 2005 WL 119534, at *19 (Tenn. Crim. App. Jan. 19, 2005). Although the post-conviction court also presided over the Petitioner's trial, when granting relief on this ground, the post-conviction court stated that it did not know how it would have ruled on a motion to sever. Thus, we must begin our analysis by assessing the viability of a pre-trial motion to sever the offenses.

Initially, the Petitioner was indicted separately for the aggravated robberies and especially aggravated kidnapping. Prior to trial, the State requested consolidation, which the Petitioner agreed to. At the evidentiary hearing, trial counsel testified that he did not oppose consolidation because he believed the events surrounding the offenses were so closely related that joinder was mandatory. Additionally, at the time the offenses were joined, the trial court stated that joinder was "probably" mandatory "if it's the same basic event."

Tennessee Rule of Criminal Procedure 13(a) provides that a court "may order consolidation for trial of two or more indictments . . . if the offenses . . . could have been joined in a single indictment . . . pursuant to Rule 8." Rule 8(a) provides for mandatory joinder of offenses where the offenses are "based on the same conduct or arise from the same criminal episode; . . . within the jurisdiction of a single court; and . . . known to the appropriate prosecuting official at the time of the return of the indictment(s) . . . ." Rule 8(b), governing permissive joinder of offenses, provides that "[t]wo or more offenses may be joined in the same indictment" if the offenses are either (1) "parts of a common scheme or plan" or (2) "of the same or similar character."

However, Rule 14(b)(2) provides that where offenses are mandatorily joined pursuant to Rule 8(a), "the court shall grant a severance of offenses either (1) "[b]efore trial on the motion of the state or the defendant when the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense" or (2) "[d]uring trial, with the consent of the defendant, when the court finds a severance is necessary to achieve a fair determination of the defendant's guilt or innocence." Likewise, Rule 14(b)(1) provides that if "two or more offenses are joined . . . pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others."

The primary issue of any severance case is whether the evidence of one offense would be admissible in the trial of the other if the two offenses remained severed. State v. Garrett, 331 S.W.3d 392, 402 (Tenn. 2011). Put another way, a severance motion is essentially "'a question of evidentiary relevance.'" Id. (quoting State v. Spicer, 12 S.W.3d 438, 445 (Tenn. 2000)). This inquiry necessarily implicates Tennessee Rule of

Evidence 404(b), which excludes evidence of "other crimes, wrongs, or acts" committed by the defendant when offered only to show the defendant's propensity to commit the crime charged. This is because such evidence lacks relevance and invites the finder of fact to infer guilt from propensity. Id. at 402-03.

However, evidence of prior bad acts may be admissible for other purposes, such as "to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue." State v. Moore, 6 S.W.3d 235, 239 n.5 (Tenn. 1999) (quoting State v. Hallock, 875 S.W.2d 285, 292 (Tenn. Crim. App. 1993)). Additionally, other act evidence may be introduced to provide the trier of fact with the "full story" of the crime or crimes. State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995) (citing Neil Cohen, et. al., Tennessee Law of Evidence, § 404[13] (6th ed. 2011)), overruled on other grounds by Spicer, 12 S.W.3d at 447. Accordingly, where "contextual evidence is relevant to an issue other than criminal propensity and its probative value is not outweighed by the danger of unfair prejudice, then that evidence may be properly admissible." State v. Gilliland, 22 S.W.3d 266, 271 (Tenn. 2000). "[C]ontextual background evidence, which contains proof of other crimes, wrongs, or acts, may be offered as an 'other purpose' under Rule 404(b) when exclusion of that evidence would create a chronological or conceptual void in the presentation of the case and that void would likely result in significant jury confusion concerning the material issues or evidence in the case." Id. at 272 (footnote omitted).

After careful consideration, we conclude that the Petitioner has failed to carry his burden of proving prejudice. Certainly, we agree that trial counsel's guessing that the court would deny a motion to sever was not a good reason for opting to not file the motion. However, upon the record before us, we think it is unlikely that the trial court would have granted a severance. The robbery and kidnapping were closely related in time, and the alleged motive for the kidnapping was Grayson's flight during the robbery. Grayson's testimony was that he abandoned the Petitioner during the robbery and that the Petitioner soon after caught up with him at a convenience store, forcing Grayson into his car at gunpoint. Grayson testified that while the Petitioner was torturing him, the Petitioner repeatedly asked why Grayson had abandoned him during the robbery. Likewise, Mr. Ellison testified that when the Petitioner was torturing Grayson, he lamented that he was tired of "people running off on him and messing him over." This is a case where the robbery evidence was helpful as a means to provide the contextual background or "full story" for the kidnapping. Without knowing anything about the robbery, the jury would have likely been confused about the circumstances surrounding the kidnapping. Consequently, the Petitioner has failed to demonstrate that a motion to sever would have been granted.

We also conclude that the Petitioner has failed to establish that he was otherwise prejudiced by the aggravated robbery evidence. We acknowledge that an examination of the prejudice prong is not synonymous with a review of the sufficiency of the evidence, see Pylant v. State, 263 S.W.3d 854, 875 (Tenn. 2008); however, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury[,]" see Strickland, 466 U.S. at 695. As this court noted on direct appeal, "[Grayson's] testimony about motive vis-à-vis the aggravated robbery charges added little to the State's case concerning the especially aggravated kidnapping charge, especially given the strength of the State's proof of the especially aggravated kidnapping." Little, 2012 WL 8718, at *8.

While the Petitioner has posited that the prosecutor's closing argument relied heavily upon the evidence of the aggravated robbery, we disagree. The prosecutor did begin his closing argument by recounting the facts of the robbery, but the majority of his time was spent recapping the evidence related to the kidnapping. We do not think the prosecutor's recount of the robbery was improper or overbearing given that it did provide a motive for the remaining charge before the jury. Also, to the extent that the Petitioner contends the failure to file a motion to strike exacerbated the failure to file a motion to sever, we find it unlikely the trial court would have granted such request. The State specifically requested that it be allowed to argue in closing that the robbery was motive for the kidnapping, which the trial court allowed. The trial court obviously considered that the evidence of the robbery was reliable enough to be presented to the jury as motive for the kidnapping.

Although counsel deficiently performed in not requesting a limiting instruction informing the jury that it should only consider the robbery as motive evidence, we do not see that the petitioner established prejudice. Even without that instruction, we think it unlikely that the jury used the robbery evidence to infer the Petitioner's propensity to commit the kidnapping. After the acquittals were granted, the only relevance of the robbery evidence was to show a motive and provide contextual background for the kidnapping. Additionally, the jury was informed that the aggravated robbery charges were of no concern to the jury and should not be the subject of speculation. We presume that the jury followed this instruction. See State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990).

In sum, we conclude that the Petitioner has not shown that, but for counsel's failure to file a motion to sever, there is a reasonable probability that he would not have been convicted of especially aggravated kidnapping. The post-conviction court's grant of relief on this ground is therefore reversed.

## B. Failure to Interview Ms. Sirhan

The State next contends that the Petitioner failed to show he was prejudiced by trial counsel's failure to interview Ms. Sirhan because, although her testimony might have undermined Grayson's credibility, it was not substantial enough to affect the outcome of the trial. The Petitioner responds that Ms. Sirhan's testimony "would have cast doubt" upon Grayson's testimony, and he asks that we affirm the judgment of the post-conviction court in this respect.

In order to satisfy the prejudice prong of Strickland when alleging that trial counsel was ineffective for failing to investigate or call witnesses, the petitioner must "show that through reasonable investigation, trial counsel could have located the witness . . . . and . . . elicit[ed] both favorable and material testimony from the witness." State v. Denton, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). At the evidentiary hearing, the Petitioner produced a signed statement from Ms. Sirhan and both sides stipulated that it reflected what her trial testimony would have been. However, trial counsel was not asked a single question about his efforts to locate and interview potential witnesses from the store where the kidnapping was alleged to have taken place. This omission is especially important given the time that elapsed between the kidnapping and the charges against the Petitioner. Ms. Sirhan stated in the affidavit that she stopped working at Sandy's in December 1998, and the Petitioner was not charged in this case until sometime in 2005. Ms. Sirhan did not relate where she was in 2005 or whether she could have been located by counsel. Obviously, post-conviction counsel was able to locate her in 2014, when she provided her statement, but that fact does not establish whether she was available at the time of the Petitioner's trial. Without information regarding trial counsel's attempts to locate and interview potential witnesses at the time of trial, we are unable to assess counsel's performance in this regard. The simple fact that Ms. Sirhan did not actually testify at trial does not establish that trial counsel's performance was deficient. Accordingly, the Petitioner has not proven that trial counsel provided deficient performance in this respect, and the post-conviction court's grant of relief on this ground is reversed.

## C. Decision to Call Lesley Allen as Defense Witness

Finally, the State contends that trial counsel's decision to call Mr. Allen was a reasonable strategic decision based on the information he had at the time and that, although he was impeached by a rebuttal witness, it did not affect the outcome of the trial. The Petitioner again responds by asking that we affirm the post-conviction court's ruling on this ground.

At trial, Mr. Allen testified that Grayson told him that "Two-Hype" had kidnapped him and taken him to a house where he forced Grayson to smoke crack cocaine and eat

-15-

dog feces. On cross-examination, the State attempted to impeach Mr. Allen with a previous statement he made wherein he implicated the Petitioner as Grayson's kidnapper. Mr. Allen denied making the previous statement and insisted that Grayson told him Two-Hype was responsible for the kidnapping.

Detective Phillips was later called as a rebuttal witness. Detective Phillips testified that he was present at a proffer session between Mr. Allen and federal authorities. Detective Phillips described a "proffer" as an opportunity for inmates to provide information about crimes. At the proffer, Detective Phillips asked Mr. Allen if he knew about an incident where Grayson was tied up, and Mr. Allen finished his sentence, saying, "[A]nd made to eat dog s--t." Mr. Allen told Detective Phillips that Grayson had told him about the incident and that the Petitioner had also told him about it. According to Mr. Allen, the Petitioner had tried to get Mr. Allen to convince Grayson not to prosecute the Petitioner, because the Petitioner knew that Mr. Allen and Grayson were related. Detective Phillips said that Mr. Allen had told him that the Petitioner admitted he had put a gun to Grayson's head and forced him to eat dog feces and smoke crack cocaine. Mr. Allen said that Grayson had told him this story implicating the Petitioner "years ago."

On cross-examination, Detective Phillips admitted that there was no oath given before a proffer session; thus, the information provided was not sworn to. The detective further admitted that Mr. Allen's statement was made on February 2, 2007, after the Petitioner's first trial on the robbery and kidnapping charges, which had ended in a mistrial in February 2006. Detective Phillips agreed that several witnesses went back to the county jail after the first trial.

At the evidentiary hearing, trial counsel said that he found Mr. Allen's name in detective notes provided by the State at the close of its case-in-chief. After speaking with him for five to ten minutes, he believed that Mr. Allen would provide favorable testimony and decided to call him as a witness. Trial counsel opined that Mr. Allen's direct testimony went "beautifully" but that cross-examination went "horribly."

When the post-conviction court granted relief on this ground, it acknowledged that the decision to call Mr. Allen was strategic but ultimately concluded that it harmed the defense and that trial counsel would not have called Mr. Allen had he put more thought into the decision.

Upon review, we once again conclude that the Petitioner has failed to prove that counsel's decision to call Mr. Allen as a witness constituted ineffective assistance. Trial counsel was forced to make a judgment call about whether to call Mr. Allen as a witness after he learned of him in the middle of trial. During his brief interview, counsel determined that Mr. Allen was credible. Indeed, Mr. Allen provided helpful testimony on

direct examination, alleging that Grayson had implicated Two-Hype in his kidnapping rather than the Petitioner. Further, when the State attempted to impeach Mr. Allen on cross-examination, he stuck to his trial testimony, insisting that Grayson named Two-Hype as the responsible party. However, the State later offered Detective Phillips as a rebuttal witness, and any positive effect of Mr. Allen's testimony was significantly undermined. Nevertheless, when reviewing an attorney's performance, we must evaluate the performance at the time of trial and avoid the "distorting effects of hindsight." See Strickland, 466 U.S. at 689. Although Mr. Allen's testimony was ultimately unhelpful, "the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper, 847 S.W.2d at 528. Based on the information he had at the time, counsel made a reasonable decision to call a witness who he believed would provide favorable testimony, and the Petitioner has not proven counsel's performance was deficient.

Additionally, the Petitioner has not proven that he was prejudiced by Mr. Allen's testimony. Competing stories about who perpetrated the kidnapping were offered at trial. Grayson and Mr. Ellison testified that the Petitioner was responsible, while Mr. Hatten, Mr. Allen, and Mr. Carter cast doubt upon that testimony and implicated Two-Hype in the kidnapping. Also, the Petitioner himself testified and denied participating in either the robbery or kidnapping. Therefore, even if Mr. Allen had not been called as a witness, the jury would have heard the same evidence. Of course, we do not deny that more evidence, even if it is of a similar nature to other evidence, strengthens the case against a defendant. However, the quantity of the evidence against the Petitioner was not substantially increased based on Detective Phillips's rebuttal evidence relating to Mr. Allen's previous statement. Accordingly, we cannot conclude that the outcome of the proceeding would have been different if Mr. Allen had not been called as a witness, and the Petitioner has failed to carry his burden in proving that he was prejudiced in this respect. Consequently, the post-conviction court's grant of relief on this ground is reversed.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is reversed, and the Petitioner's conviction for especially aggravated kidnapping is reinstated.

_____
D. KELLY THOMAS, JR., JUDGE

-17-