STATE of Tennessee, Appellee,

v.

Ernest WOODS, Appellant.

STATE of Tennessee, Appellee,

v.

Teresa LADD, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Oct. 23, 1990.

Permission to Appeal Denied by Supreme
Court Feb. 25, 1991.

Mark E. Stephens, Knoxville, for Woods.

James Y. (Bo) Reed, Jenkins & Jenkins, Knoxville, for Ladd.

Charles W. Burson, Attorney General and Reporter, C. Anthony Daughtrey, Asst. Atty. Gen., Nashville, William E. Dossett, Dist. Atty. Gen. and Mike G. Nassios, Asst. Dist. Atty. Gen., Knoxville, for the State.

OPINION

WADE, Judge.

The defendants, Ernest Woods and Teresa Ladd, were each convicted of first degree murder and sentenced to terms of life imprisonment. In these appeals of right, the defendants challenge the sufficiency of the evidence and present the following, common issues for review:

(1) whether the trial court properly admitted evidence seized during a search of a Georgia residence;

(2) whether the trial court properly admitted the defendant Ladd's out-of-court statements.

Woods contends the trial court failed to properly control the admission of certain trial testimony and should have granted a mistrial. Ladd argues other issues:

(1) whether the trial court erred by failing to grant severance;

(2) whether the bullets causing the victim's death were improperly admitted into evidence; and

(3) whether the trial court committed error in its supervision of the suppression hearing.

We find no prejudicial error and affirm the judgments of the trial court.

Just before noon on April 9, 1987, the body of the victim, Otis Newton, was found shot to death in an abandoned quarry in Knox County. There were 13 gunshot wounds. Four small caliber bullet wounds were found in the victim's head and nine larger caliber bullet wounds were found throughout the remainder of his body. Upon investigation, the sheriff's department determined that the victim, two black males, and a black female had been seen earlier that morning going towards the quarry. The defendant Woods and his brother, Joe, were constant companions of the victim. Each was known to carry a gun. The defendant Ladd had been living with the victim and his wife for several weeks prior to the murder. That the victim was addicted to drugs was common knowledge among his friends.

The day before the murder, the victim left his residence in Oak Ridge in the accompaniment of both defendants and Joe Woods. The defendants returned to the Newton residence at 3:30 A.M. without the victim. They stayed there until they took Mrs. Newton to her job at 7:45 A.M. Although Ladd left her clothes at the Newton residence, she never returned. Neither defendant attended the victim's funeral services.

Several months later, police in Athens, Georgia, went to the residence of Mary Woods, the 97 year old grandmother of the defendant Woods. When Woods was identified, he was arrested on an unrelated robbery charge. Mary Woods then consented to a search of the bedroom the defendants shared. Officers found a .25 caliber pistol, a .357 caliber pistol, and a receipt in the name of Teresa Ladd. The .357 caliber bullets found at the scene had been fired by the gun found at the residence. Five Winchester .25 caliber cartridges found at the murder scene were of the same manufacture as one of the cartridges recovered from the defendants' bedroom.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). A jury verdict accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state's theory. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983). Our review is limited to whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Circumstantial evidence alone may be sufficient to convict. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 456–57 (1958).

The circumstances of this case establish that the defendant was killed sometime between 10:00 A.M. and just before noon on April 9, 1987. Both defendants were with the victim shortly before his death. After the murder, Ladd left the Newton home hurriedly. Several months later, the defendants were found together in Georgia using the false names of Ernest and Teresa White. A search of the bedroom the defendants shared jointly in the residence of Mary Woods yielded the murder weapons. Expert testimony matched shell casings found at the scene and bullets found in and near the victim's body with the two guns. There was adequate proof that the weapons belonged to the defendants. Prior to the murder, Ladd had been heard to say that the defendant Woods had her .357 and that she was using a "pea shooter" or "little bitty gun." Ladd was often heard to say that "if you killed the head, the body will die." All four of the victim's head wounds were caused by the smaller caliber weapon.

We find the circumstantial evidence sufficient to support each of the first degree murder convictions.

## I

Ladd contends that the trial court erroneously concluded that she had no standing to challenge the search. Both defendants complained that the evidence found in the search should have been suppressed.

One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place or property searched. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *State v. Roberge*, 642 S.W.2d 716, 718 (Tenn.1982). Our court has recognized that "an individual may have such a legitimate expectation of privacy in another person's residence." *State v. Turnbill*, 640 S.W.2d 40, 45 (Tenn.Crim.App.1982); *see Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

In *United States v. Haydel*, 649 F.2d 1152, 1154–55 (5th Cir.1981), the United States Court of Appeals listed seven factors applicable to the standing inquiry:
(1) property ownership;
(2) whether the defendant has a possessory interest in the thing seized;
(3) whether the defendant has a possessory interest in the place searched;
(4) whether he has a right to exclude others from that place;
(5) whether he has exhibited a subjective expectation that the place would remain free from governmental invasion;
(6) whether he took normal precautions to maintain his privacy; and
(7) whether he was legitimately on the premises.

*Id.*

The trial judge's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates otherwise. *State v. Tate*, 615 S.W.2d 161, 162 (Tenn.Crim.App.1981).

Here, the defendants had lived in the Georgia residence for approximately three months. The defendants occupied a bedroom in Mrs. Woods' residence and paid a portion of the "bills" such as utilities. The defendants bought their own food. Mrs. Woods occasionally entered the defendants' bedroom yet apparently knocked (at least while the defendants were there) before she entered. The defendants kept their clothes in the bedroom and did any cleaning and maintenance that was necessary there. The defendants shared a key to the house. The bedroom door could not be locked. At the time of the search, Woods had already been placed under arrest for the robbery charge; Ladd was temporarily absent from the home. Neither defendant stayed at any other address while in Georgia. We note that Mrs. Woods did not testify at the suppression hearing or at trial.

We have applied the factors approved in *Turnbill*. Our analysis suggests that the evidence preponderated against the ruling of the trial court on this issue. We find that Ladd did, in fact, have a legitimate expectation of privacy. Although she lacked property ownership and disclaimed

any possessory interest in the property (guns) seized, Ladd did, in our view, have a possessory interest in the place searched; probably had the right to exclude others from the bedroom area (although not necessarily Mrs. Woods); certainly had a subjective expectation that the place would remain free of governmental invasion, and took normal precautions to maintain the privacy. We also think that Ladd, despite any pretext that she was married to the defendant Woods (as justification to Mrs. Woods for sharing one bedroom) had a legitimate expectation of privacy.

██ This does not mean, however, that Mrs. Woods' consent to the search of the bedroom was ineffectual. The defendants remained in Mrs. Woods' home only because she permitted it. While there was some evidence that the defendants paid a part of the light bill and the phone bill, there is little suggestion that their arrangement was a rental agreement. The defendants' use of the room was incident to a familial relationship. Mrs. Woods occasionally entered the bedroom to talk to the defendants. Ladd candidly admits "it was just grandmother." We interpret that to mean that because of the family situation, there was no writing and no need for a formal, or even informal, agreement; all three occupants, we think, had access to all areas of the residence.

Generally, consent searches are exceptions to the requirement of a search warrant. A valid consent may be given by third persons who have some type of joint authority over the area to be searched. Raybin, *Tennessee Criminal Practice and Procedure*, § 18.250.

Both the state and the defendants cite *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974):

> [C]onsent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.

*Id.*, 94 S.Ct. at 993.

The court defined common authority as the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 993 n. 7.

At the suppression hearing, it was established that Mrs. Woods owned the residence. The testimony indicates that the defendants stayed with Mrs. Woods as an accommodation to her as well as a matter of convenience to the defendants. The defendant Woods' mother, for example, was unable to go. The record establishes that Mrs. Woods, because of her age and illness, "could not get around too good."

We find that the proof supported the trial court's finding that Mrs. Woods retained joint access and control of the bedroom in which the defendants resided. This is so, we think, despite the common courtesy Mrs. Woods may have practiced regarding the defendants' occupancy of that portion of her residence. We do not find this case distinguishable from *Pennington v. State*, 478 S.W.2d 892 (Tenn. Crim.App.1971). The defendants' occupancy of the bedroom was not so exclusive as to deprive Mrs. Woods of her authority to consent to the search.

## II

During the month prior to the murder, two witnesses overheard Ladd say, "I wish I could get my .357 back from my baby because I am tired of this pea shooter" and "If you kill the head, the body will die." Both defendants object to the evidence on grounds of relevancy.

██ A declaration of intent to engage in criminal conduct is generally relevant and admissible; when, however, it is general in character and has no apparent relationship to the crime which follows, it is irrelevant. 1 *Wharton's Criminal Evidence*, § 139, 14th ed. 1985. In *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978), the Supreme Court adopted Rule 401 of the Federal Rules of Evidence as the appropriate definition of relevance:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that it is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

*Id.*

■ The state's theory was that Ladd possessed the .25 caliber pistol, was capable of using it, and actually fired the four shots to the victim's head. The statements she made were probative. They tend to negate any inference that the defendant Woods acted alone. We view these declarations in combination with the circumstantial evidence of her participation in the crime. Even though the statements make no specific reference to this victim, they are more specific than general in the context of the proof at trial. We think they were properly admitted.

■ The defendant Woods contends that Ladd's reference to "my baby" was violative of his constitutional rights to confront his accuser. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

While Woods sought a severance in this case, he did so only in the event the court granted his motion to suppress. There was no effort pre-trial to limit the introduction of Ladd's statements. Tenn.R.Crim.P. 14(c)(1) permits a defendant to ask for a severance when a co-defendant's statement makes reference to him but is otherwise inadmissible against him. In that circumstance, the state must elect to proceed without the statement, redact the statement, or agree to sever the moving defendant. Motions for severance must be made prior to trial. Tenn.R.Crim.P. 12(b)(5). Because the state was not permitted the opportunity to make the election, there is a sound basis in this instance for the application of the waiver rule.

The state also argues waiver because the defendant objected on grounds of relevancy and hearsay but not on constitutional grounds. It contends that a defendant may not object at trial to the introduction of evidence on one ground and then later assert that the evidence violated a constitu-

tional right, citing *State v. Miller,* 668 S.W.2d 281, 285 (Tenn.1984). While that is the rule when the constitutional error is asserted in a post-conviction proceeding, *Miller* is not applicable in this direct appeal. In *State v. Ogle,* 666 S.W.2d 58 (Tenn.1984), for example, the Supreme Court held in a direct appeal that a *Bruton* violation, when the statement has a "crucial effect," may be plain error. *Id.* at 60.

In this case, Woods had a .357 weapon at the time he was arrested in Georgia. Expert analysis established that the weapon had been used to murder the victim. Other evidence established that Woods carried a pistol in his shoulder holster and slept with it under his mattress. He was with the victim on the morning of the murder and left town immediately afterwards. When found with Ladd several months later, Woods was using an alias. Both weapons were found between the mattresses.

Because of the strength of the state's case and the relatively uncertain reference to Woods, i.e., "my baby," we think the *Bruton* error, if not waived, was harmless beyond a reasonable doubt. *See Cruz v. New York,* 481 U.S. 186, 194, 107 S.Ct. 1714, 1719–20, 95 L.Ed.2d 162 (1987). The statement was not "an important part of the state's case" and does not, therefore, meet the three-prong test suggested in *Ogle,* 666 S.W.2d at 60 (citing *United States v. Miller,* 666 F.2d 991, 998 (5th Cir.1982)).

### III

The defendant Woods contends that the prosecution elicited improper testimony on five separate occasions and that the trial judge should have granted a mistrial. The complaints are fairly general and may be roughly categorized as allegations of prosecutorial misconduct, improper impeachment, and improper evidence. We do not think that any of the incidents necessitated the declaration of a mistrial.

■ The state's witness, Janice Green, apparently surprised the state with certain of her testimony. For example, when asked whether or not she had ever seen the

defendant Woods "without a gun," she answered "yes." The prosecutor then asked, among several other leading questions, "since Mr. Woods has been in jail, have you been communicating with him?"

That the defendant was incarcerated prior to trial was fully developed by the testimony of Frank Burns, a defense witness. Under these circumstances, it does not appear that any prejudice resulted by the state's reference to Woods being in jail.

■■■ Although Green was never declared an adverse or hostile witness, the trial court may in its discretion permit leading questions on direct examination of such a witness. *Briggs v. State,* 501 S.W.2d 831, 838 (Tenn.Crim.App.1973). We have reviewed the nature of the direct examination and find no error or prejudice by the application of the five factors described in *Judge v. State,* 539 S.W.2d 340, 344 (Tenn. Crim.App.1976).

■■■ The officer who arrested Woods in Georgia testified at trial. When he asked Woods his name, Woods reply was, "Why do you want to know?" At that time, the officer stated, "You're Ernest Woods and I have a armed robbery warrant for you...." Woods complains that this testimony infringed upon his right to remain silent and constituted an improper reference to other crimes.

Initially, there was no contemporaneous objection. The issue is therefore waived. *State v. Sutton,* 562 S.W.2d 820 (Tenn. 1978). Further, the trial court provided a curative instruction with reference to the unrelated robbery charge. The jury is presumed to have followed the directions. *State v. Blackmon,* 701 S.W.2d 228, 233 (Tenn.Crim.App.1985). Moreover, we do not view the testimony of the arresting officer as an impermissible comment on the right to remain silent.

■■■ The defendant Woods also objects to the manner in which the state attempted to introduce a March 8, 1987, letter into evidence. The letter, dated one month before the commission of the crime, was excluded after a jury-out hearing. Before the jury was excused, however, they overheard the trial court inquire as to what relevance the letter might have. The assistant district attorney general responded, "I'd have to discuss it in front of the jury, judge." He then asked whether or not the court wanted to read the letter.

The defendant insists that this dialogue between the court and the state was prejudicial, especially since the judge read the letter before excusing the jury. We do not agree. After the letter was excluded, the trial court instructed the jury to disregard its rulings regarding the admissibility of the evidence; he warned that statements of counsel were not evidence. The jury is presumed to have heeded this directive. We find no error here.

At one point, the prosecutor asked a state witness the identity of the person to whom the victim owed drug money. After an objection and a jury-out hearing, the evidence was excluded. The defendant submits that the question improperly implied that the victim owed drug money to Woods. Again, we think the curative measures taken by the trial court negated any inappropriate inference the jury may have made. This issue is without merit.

### IV

Ladd asserts that the trial court committed error by (1) denying her motion for severance; by (2) improperly admitting into evidence the bullets causing the victim's death; and by (3) allowing hearsay testimony at the hearing on the motion to suppress.

Whether to grant a severance is generally within the trial court's discretion. *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1 (1969). We have reviewed the defendant's arguments for severance and have found no reason to believe that separate trials were necessary or appropriate for a fair determination of Ladd's guilt or innocence. Tenn.R.Crim.P. 14(c)(2).

■■■ The basis for the defendant's objection to the introduction of the bullets causing the death of the victim is that the state failed to establish an unbroken chain of custody. *Bolen v. State,* 544 S.W.2d

918, 920 (Tenn.Crim.App.1976). In determining the admissibility of tangible evidence, the rule does not require absolute certainty of identification. It is sufficient if the facts establish a reasonable assurance of the identity of the evidence. *Ritter v. State,* 3 Tenn.Crim.App. 372, 462 S.W.2d 247 (1970). Whether the proof sufficiently establishes the chain of custody is a matter committed to the discretion of the trial judge. *Id.* 462 S.W.2d at 249. The pathologist maintained the bullets in a marked file until the bullets were identified later by markings on the container. We think the trial court found an appropriate basis for the introduction of the evidence. The record contains no indication that the bullets or the container in which they were kept had been altered or tampered with in any improper way.

Finally, Ladd complains that the trial court abused its discretion by permitting the state to introduce the hearsay statements of Mary Woods, the owner of the Georgia residence, while not permitting the defendant to testify as to Mrs. Woods' out-of-court declarations.

We initially note that Ladd failed to cite the record in support of any error or omission. This may result in a waiver of the issue. *See* Rules of Appellate Procedure 27(a)(7); Rules of Court of Criminal Appeals 10(b). Yet, in this instance, the information was subsequently supplied in the reply brief.

 Hearsay is generally admissible for the purpose of showing probable cause to search or arrest. *State v. Hill,* 638 S.W.2d 827, 830 (Tenn.Crim.App.1982). Probable cause is determined by assessing all the information available to the officer. *State v. Jefferson,* 529 S.W.2d 674 (Tenn. 1975). The hearsay evidence presented by the state was properly considered.

Whether the defendants' evidence was properly excluded by the trial court is no longer an issue. Ladd complains that the trial court did not permit testimony which related to the issue of standing. Because we have found that Ladd did, in fact, have standing to challenge the validity of the

search, whether the evidence was admissible is now a moot question.

Accordingly, the judgments of the trial court as to each defendant are affirmed.

BYERS, P.J., and SCOTT, J., concur.