# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned On Briefs July 25, 2012

## STATE OF TENNESSEE v. JAMES R. TROXELL

### Appeal from the Criminal Court for Campbell County
### No. 14345      E. Shayne Sexton, Judge

### No. E2012-00233-CCA-R3-CD - Filed August 27, 2012

A Campbell County Criminal Court jury convicted the defendant, James R. Troxell, of two counts of rape of a child and one count of aggravated sexual battery.  The trial court imposed a total effective sentence of 56 years' incarceration.  On appeal, the defendant contests the sufficiency of the evidence to support his convictions and the trial court's allowing witness testimony which, the defendant alleges, improperly bolstered the victim's testimony. Discerning no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Thomas F. Eikenberry, LaFollette, Tennessee (at trial), for the appellant, James R. Troxell.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William Paul Phillips, District Attorney General; and Scarlett W. Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's convictions arise from offenses committed against his step-granddaughter, G.S.,[1] when she was six and seven years old.  The victim, who was 17-years-old at the time of trial, testified that, beginning in 2000 until March 2002, she and her mother, Lena Hughes, lived with the defendant and his wife, Beverly Troxell, who was the victim's biological grandmother.  The defendant's two sons, Eric and John, also lived in the

---

[1]As is the policy of this court, we will refer to the child victim in this case by her initials.

home.  The victim recalled attending the first grade at Jellico Elementary School while living at the defendant's home.

The victim testified regarding two specific incidents involving the defendant's abusing her.  She said that on one occasion the defendant entered the bathroom while she was taking a bath.  She said that the defendant "knelt down on one knee and used his hands on [her] chest and then he went down [her] female part."  She further explained that the defendant "put two fingers [on her vagina] . . . [but] didn't go inside."  She said that the defendant then "just went back and forth."  The victim testified that she did not say anything because she was scared.  The defendant then stood up and walked out of the bathroom.

The victim testified that on another day, the defendant walked into the living room wearing only socks and underwear while the victim slept on the couch.  The victim said that the defendant pulled down her panties and placed his fingers "on [her] vagina . . . [and] just rubb[ed]" her vagina.  She said that the defendant then "crawled on top of [her]" with his underwear at his ankles and "force[d] his penis inside of her."  The victim recalled that it "hurt really bad."  She said that she tried to push the defendant off and told him to stop.  She testified that the defendant eventually got up and walked back to his bedroom.

The victim recalled telling her grandmother and mother that she had been raped.  She claimed that neither believed her, so she did not report subsequent incidents.  After moving to Illinois to live with her grandfather and step-grandmother, who ultimately adopted the victim, she talked to her adoptive mother, Connie Selby, about the abuse she had endured while living in Tennessee.  The victim received treatment from a therapist after moving to Illinois.

On cross-examination, the victim admitted that she leveled allegations of rape against not only the defendant, but also against her biological mother, her mother's boyfriend, her mother's ex-husband, both of the defendant's sons, and two of the sons' friends – a total of eight different individuals.  She admitted that the defendant's sons raped her so frequently that she could not even tell how many times she had been abused.  She also acknowledged that her journal, written several years after moving to Illinois, included factual allegations and some "hallucinations."  She said that she kept the journal after her therapist recommended that she "write down what [she] dreamed about and remembered" so that she could "get [her] feelings and emotions out on a piece of paper."

Connie Selby, the victim's step-grandmother and adoptive mother, testified that her husband is the victim's biological grandfather.  Ms. Selby said that the victim and Ms. Hughes came to live with them "off and on" beginning in March 2002.  The victim stayed permanently with Ms. Selby and her husband beginning on July 26, 2002.  The Selbys

ultimately adopted the victim on December 20, 2004. Ms. Selby testified that she procured mental health counseling for the victim in late 2002.

Linda Schultz, a child and adolescent therapist, testified that she treated the victim from April 25, 2005, until November 2007. Ms. Schultz said that she asked the victim to keep a journal as part of her treatment. Ms. Schultz contacted the State of Tennessee to report instances of sexual abuse recounted by the victim in her journal.

The defendant testified and denied committing both acts of child rape and the act of aggravated sexual battery.

With this evidence, the jury convicted the defendant of two counts of rape of a child for the digital and penile penetration occurring on the couch and one count of aggravated sexual battery for the incident in the bathroom. Following an unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In addition to contesting the sufficiency of the evidence to support his convictions, the defendant contends that the trial court erred by allowing the testimony of Linda Schultz, claiming that her status as a child and adolescent therapist allowed the State to improperly bolster the victim's testimony.

*Sufficiency of the Evidence*

The defendant contends that the State failed to establish that penetration occurred relative to his conviction for digitally penetrating the victim on the couch because the victim testified that the defendant's fingers did not enter her vagina. He also argues that the victim's testimony lacked credibility because she had leveled allegations of sexual abuse against seven other individuals. The State argues that the evidence sufficiently established that penetration occurred and that the jury, by its verdict, resolved all questions concerning the victim's credibility. We agree with the State.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.*

Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

Rape of a child is defined as the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7). Furthermore, in the case of vaginal penetration as alleged in the rape of a child counts in this case, "[i]t is not necessary that the vagina be entered or that the hymen be ruptured, the entering of the vulva or labia is sufficient" to establish penetration. *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001) (quoting *Hart v. State*, 21 S.W.3d 901, 905 (Tenn. 2000)).

Aggravated sexual battery, as relevant to this case, is the "unlawful sexual contact with a victim by the defendant or the defendant by a victim [when] . . . [t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Additionally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

In our view, the victim's testimony established that the defendant digitally penetrated her vagina. The victim testified that the defendant placed his fingers on her vagina and rubbed her vaginal area. This testimony clearly established that the defendant's fingers "enter[ed] . . . the [victim's] vulva or labia" and, therefore, sufficiently established digital penetration with respect to Count One of the indictment. *See Bowles*, 52 S.W.3d at 74. Furthermore, the jury resolved any conflicts in the evidence and any issues concerning the credibility of the victim, as was their province to do. Accordingly, we conclude that sufficient evidence exists to support the defendant's convictions of two counts of rape of a child and one count of aggravated sexual battery.

*Admission of Testimony*

The defendant also argues that the trial court erred by allowing Ms. Schultz to testify regarding the victim's keeping a journal regarding the abuse. The defendant contends that Ms. Schultz's testimony improperly bolstered the victim's allegations of sexual abuse. The State argues that the testimony did not improperly bolster the victim's testimony and that the trial court appropriately limited the testimony.

The record reveals that Ms. Schultz testified regarding her employment and training as a child and adolescent therapist. During a discussion of her qualifications, Ms. Schultz said that she treated patients suffering from post-traumatic stress disorder and child sexual abuse syndrome. The State then tendered Ms. Schultz as an expert in child therapy. During a jury-out hearing, the defendant objected to Ms. Schultz's testimony concerning child sexual abuse syndrome, *see State v. Ballard*, 855 S.W.2d 557 (Tenn. 1993) (holding that testimony concerning behavior and characteristics of child sexual abuse syndrome was inadmissible), and also objected to her testifying as an expert witness for fear that such testimony would bolster the victim's testimony. The trial court precluded any testimony concerning child sexual abuse syndrome diagnosis or behavior and also declined to qualify Ms. Schultz as an expert in an effort to avoid any possibility of bolstering. The trial court, however, allowed Ms. Schultz's "anecdotal proof" that the victim had in fact kept a journal detailing her abuse for use in treatment. The trial court then instructed the jury to disregard any testimony concerning Ms. Schultz's experience treating patients with post-traumatic stress disorder or child sexual abuse syndrome. Likewise, the court instructed that Ms. Schultz would not testify as an expert.

Initially, we cannot discern how a witness's mere corroboration of another witness's testimony constitutes bolstering when, as in this case, Ms. Schultz's testimony merely confirms the victim's testimony that she was asked to keep a journal regarding her experiences. That being said, we also note that the trial court specifically instructed the jury not to consider Ms. Schultz an expert. In that vein, we must presume the jury followed the trial court's instructions and did not place any inappropriate weight upon Ms. Schultz's testimony. *See, e.g.*, *State v. Woods*, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990) (the jury is presumed to follow the instructions given it by the trial court.). We further note that the defendant, not the State, elicited the testimony concerning the victim's journal during cross-examination of the victim. Under these circumstances, we cannot discern any error in the trial court's admission of testimony.

*Conclusion*

The evidence sufficiently established the defendant's convictions of two counts of rape of a child and one count of aggravated sexual battery. The trial court did not erroneously allow testimony from Ms. Schultz. Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE