IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 27, 2022

## WILLIAM COLEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3254    Mark J. Fishburn, Judge**

_____

### No. M2021-01243-CCA-R3-PC

_____

The Petitioner, William Coley, appeals the denial of his petition seeking post-conviction relief from his convictions of first-degree felony murder, second degree murder, and especially aggravated robbery, for which he received an effective sentence of life imprisonment. The Petitioner argues for the first time on appeal that the post-conviction court violated his due process rights by conducting his post-conviction hearing jointly with the post-conviction hearing of his then co-defendant, now Petitioner Markreo Quintez Springer. He additionally claims ineffective assistance of counsel based on trial counsel's failure to file a pretrial severance motion based on Bruton v. United States, 391 U.S. 123, 136-137 (1968), and trial counsel's failure to challenge the chain of custody regarding the State's DNA evidence.[1] Upon our review, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and ROBERT W. WEDEMEYER, J., joined.

Ana Escobar (at trial) and Kevin McLean Kelly (on appeal), Nashville, Tennessee, for the Petitioner, William Coley.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Sarah Davis and Rob McGuire, Assistant District Attorneys General, for the Appellee, State of Tennessee.

---

[1] The Petitioner raised additional issues in his petition for post-conviction relief and before the post-conviction court. We deem those issues not raised in this appeal to be waived. For clarity, we take these issues from the argument section of the Petitioner's brief. The issue presented section has the issue for review as follows:

> Whether the evidence presented in the defendant's petition for relief from conviction on grounds that it violates his state and federal constitutional rights preponderates in favor of the defendant and against the ruling of the trial judge

# OPINION

The Petitioner and his then co-defendant, Markreo Quintez Springer, were implicated in the shooting death of the victim, Sadagh Maleki, in his place of business, Lucky's Auto Imports, in Nashville, on July 27, 2009. See State v. Markreo Quintez Springer and William Mozell Coley, No. M2012-02046-CCA-R3-CD, 2014 WL 2828932, at *1 (Tenn. Crim. App. June 20, 2014), perm. app. denied (Tenn. Nov. 20, 2014). The following proof, as relevant to the issues raised in this appeal, was adduced at their joint trial.

> At trial, the victim's son, Ramin Maleki, testified that his sixty-nine-year-old father had owned Lucky's Auto Imports for twenty-three years and that he habitually closed the business at around 5:00 or 6:00 p.m. during the summertime. On the day of the victim's death, the victim had been driving a Chevy truck; after the homicide, the victim's pipe and the lunch the victim's wife had packed were recovered from the truck. The victim's son testified that the victim had a .25 caliber gun which "carried, like, two shots," and which the victim routinely took to work. The weapon was never recovered after the homicide.

State v. Springer, No. M2012-02046-CCA-R3-CD, 2014 WL 2828932, at *1 (Tenn. Crim. App. June 20, 2014).

Three witnesses who were acquainted with both Petitioners testified regarding events before and after the crimes which implicated the Petitioners in the robbery and homicide. Id. Tabitha Reese and Maurice Smith lived in the same boarding house as the Petitioners. Reese and Smith testified that the Petitioners were in need of money prior to the day of the homicide.

> Ms. Reese testified that prior to the shooting, the property manager had put a note on the [Petitioners'] door informing them that they were behind in their rent. On the afternoon of July 27, 2009, Ms. Reese had just returned from an out-of-town trip. She saw the [Petitioners] return to the boarding house between 4:00 and 5:00 p.m. They came to her room and spoke with Mr. Smith. While they were there, [Petitioner] Springer said to her, "If I don't see you again, then it was nice to know you." He did not respond when she asked what he meant. Ms. Reese testified that the [Petitioners] left with their friend Ifeanyi "Iffy" Nwaigwe.

Mr. Smith confirmed that the [Petitioners] were in need of money. According to Mr. Smith, he saw the [Petitioners] in the early afternoon, and they said they were broke and needed money for rent. He heard them talking about committing a robbery. [Petitioner] Springer mentioned that he had talked to a man about buying a car, and the [Petitioners] later made a plan to rob the man. Mr. Smith overheard [Petitioner] Springer call Mr. Nwaigwe to bring him a gun, and Mr. Nwaigwe came to the house and gave [Petitioner] Springer a black rag with a pistol inside it. Mr. Smith acknowledged having previously said the [Petitioners] went to Mr. Nwaigwe's car when retrieving the gun.

. . . .

According to Ms. Reese, when the [Petitioners] returned to the boarding house after an absence of twenty to twenty-five minutes, [Petitioner] Springer was sweating and distraught. [Petitioner] Coley had blood on his shirt and what appeared to be a bullet wound on his forearm. Ms. Reese overheard [Petitioner] Springer say, "I don't know if I killed him or not." Mr. Smith accompanied the [Petitioner] to their room, and Ms. Reese later gave [Petitioner] Coley some band-aids. She and Mr. Smith left the house, and the [Petitioners] were gone when they returned.

Mr. Smith also testified that the [Petitioners] were gone from the boarding house about twenty to twenty-five minutes. When they returned, [Petitioner] Coley had been shot in the arm and was bleeding on his shirt; Mr. Smith advised him to run cold water on the wound. [Petitioner] Springer was hysterical and told Mr. Smith that after [Petitioner] Coley was shot, [Petitioner] Springer shot the man and "watched him take his last breath." Mr. Smith saw the [Petitioners] take off their clothes and put them into either one or two bags. He acknowledged having told police that [Petitioner] Springer had on a long-sleeved black shirt, black pants and purplish-white shoes and that [Petitioner] Coley was wearing black shorts, a gray tank top, a black shirt, and black shoes. On cross-examination, Mr. Smith testified that the [Petitioners] came back with a .25 caliber chrome weapon which was not a two-shot derringer. Mr. Smith also testified that [Petitioner] Springer told him the circumstances under which [Petitioner] Coley had been wounded: "Bud was supposed to jump him and the guy got the best of him and shot Bud." On redirect examination, Mr. Smith testified that he had not seen the chrome gun prior to the [Petitioners'] return and that they still had the black .22 revolver when they returned. He also stated that [Petitioner] Springer said

the .25 caliber weapon belonged to the victim. He testified the [Petitioners] then left with Mr. Nwaigwe.

\*\*\*

Mr. Nwaigwe testified that he had played basketball with the [Petitioners] for one to three hours on the day of the robbery; during which time, the [Petitioners] discussed "making some money" and "hitting licks," which he interpreted as "probably getting the dope boy or something." The [Petitioners] also discussed going to Lucky's to get tags, but Mr. Nwaigwe did not think that the potential robbery was connected with the car lot. Mr. Nwaigwe had recently begun his probation and could not legally possess a weapon; accordingly, he asked if anyone wanted his .22 revolver. No one said anything, but he gave it to one of the [Petitioners]. Mr. Nwaigwe testified he did not remember which. He testified the [Petitioners] did not ask for his gun. According to Mr. Nwaigwe, he went to his house after the game, got the gun, and took it to the [Petitioners'] boarding house sometime after 4:00 p.m. but before nightfall. An hour or two later, the [Petitioners] called him, told him [Petitioner] Coley had been shot, and asked him to come get them. [Petitioner] Coley's arm was wrapped up, and [Petitioner] Springer was "kind of freaking out." Mr. Nwaigwe agreed [Petitioner] Springer said, "I think I shot him." However, he denied overhearing a conversation between the [Petitioners].

\*\*\*

The day after the shooting, Ms. Reese was helping the property manager's daughter clean the [Petitioners'] room after they had vacated it. She found a bullet casing and put it in a jewelry case. Although Ms. Reese testified she was with the manager's daughter, Mr. Smith testified he helped her clean the room and was there when she found the casing. On July 29, 2009, Ms. Reese found a trash bag containing what she recognized as the [Petitioners'] bloody clothing in the bushes next to a dumpster on the property. She tossed the bag back into the bushes and told the property manager, who called the police. She then directed police to the trash bag and gave them the casing. Detective Brown and Detective Filter responded to the property manager's call.

\*\*\*

Detective Brown testified that he was present when an officer named Mace collected the bag. Detective Filter examined the contents of the bag and

- 4 -

identified photographs of the items recovered, including a bloody gray tank top, bloody khakis, two pairs of black shorts, a bandana, a long-sleeved black t-shirt, a baseball cap, a pair of black shoes, and a pair of mostly white shoes.

\*\*\*

Agent Laura Staples testified regarding the DNA evidence. The defense objected at the beginning of her testimony that the prosecution had not established a proper chain of custody. The prosecution offered to bring in the receiving clerk at the TBI and the officer who brought the evidence to the TBI, but [Petitioner] Springer's counsel objected to any surprise witnesses. The trial court allowed Ms. Staples to testify. Ms. Staples testified that she received DNA samples from the victim and [Petitioners]. She also received various items including blood-stained clothing from the garbage bag, blood recovered from a gold Blazer, and a stereo with blood evidence from the crime scene. Ms. Staples testified that many of the items she received did not contain blood evidence, but she was able to identify [Petitioner] Coley's blood DNA on the gray tank top, a black sneaker, the khaki pants, the gold Blazer, and the stereo recovered near the victim's body.

During trial, the prosecution sought to introduce testimony that [Petitioner] Springer had threatened Ms. Reese while they were both incarcerated. The trial court held a jury-out hearing during which Ms. Reese testified that, while she was in the holding cell, an officer called out her name to come get her lunch. She then heard [Petitioner] Springer calling her a "b-tch," "wh-re," and "snitch." Another inmate, Emily Posey, testified that she was in a holding cell with Ms. Reese and that she heard [Petitioner] Springer's outburst when Ms. Reese's name was called for a special lunch. She later went to get a regular lunch and was first in line. She heard someone say "you stupid, b-tch, I'm going to f-cking kill you."[3] She turned and saw [Petitioner] Springer, who "was like, my bad, I thought that you was the girl that was testifying in my case." The trial court concluded that the testimony was admissible, and both women testified at trial. [Petitioner] Coley made a motion to sever, which was denied. [Petitioner] Springer then called Vincent Feggins and Leonard Johnson, corrections officers who both testified that they heard [Petitioner] Springer curse at Ms. Reese. However, neither heard [Petitioner] Springer threaten Ms. Posey, and both testified that Ms. Posey could not have seen him during the time they were receiving lunches. Both acknowledged they had not written a report and that "it would be a problem" if it were determined they hadn't written up a death threat.

State v. Springer, 2014 WL 2828932, at *2-6 (Tenn. Crim. App. June 20, 2014).

The jury convicted both Petitioners of first-degree (felony) murder, second degree murder, and especially aggravated robbery. The trial court merged the second degree murder conviction into the first-degree murder conviction. The Petitioners received a life sentence for the felony murder conviction and a concurrent sentence of fifteen years for the especially aggravated robbery conviction. State v. Springer, No. M2012-02046-CCA-R3-CD, 2014 WL 2828932, at *7 (Tenn. Crim. App. June 20, 2014) perm. to appeal denied (for Coley) (Tenn. Nov. 20, 2014).

The Petitioner appealed to this court and argued, as relevant here, that the trial court erred in refusing to grant severance after the testimony of Petitioner Springer's threats against another witness were admitted at trial and that DNA evidence which established the Petitioner's presence at the scene of the crime should not have been admitted into evidence because the chain of custody for the DNA evidence had not been established. In regard to the chain of custody issue, after a thorough review, this court determined that the chain of custody was adequately established without the testimony of the receiving TBI technician because there was no indication of tampering and the State established with reasonable assurance the identity and integrity of the evidence challenged by the Petitioner. Springer, 2014 WL 2828932, at *15. With regard to the severance issue, the Petitioner argued that the introduction of the statements by Petitioner Springer threatening other witnesses violated his right to confrontation of witnesses, that no limiting instructions were given, and that the prosecution argued that the guilt of both defendants should be inferred from the statement. Id. at *18. This court ultimately determined that there was no error because the trial court provided a limiting instruction at the close of the trial, the prosecution did not argue that the evidence applied to the Petitioner, and finally, that because the threats made no mention of the Petitioner, there was no violation of Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968) (concluding there was no Bruton violation because co-defendant's jailhouse statement asserting that he told his brother to destroy the murder weapon did not inculpate defendant). Id., 2014 WL 2828932, at *19. Petitioner Coley's application for permission to appeal to the Tennessee Supreme court was denied on November 20, 2014.

The Petitioner filed a timely pro se petition for post-conviction relief, and following the appointment of counsel, multiple amended post-conviction petitions were filed, alleging in pertinent part that trial counsel was ineffective in failing to file a motion to sever the Petitioners, in failing to object to the introduction of evidence of threats made by the co-defendant to a witness, and in failing to challenge the DNA evidence.

- 6 -

On May 4, 2021, the post-conviction court held an evidentiary hearing for both Petitioner and Petitioner Springer.[2] The court began by stating that it wanted to proceed with the Petitioners' cases in alphabetical order. The Petitioner testified that trial counsel met with him "about seven times" before his trial and that he met with a private investigator once. During these meetings trial counsel "would bring like tape-recordings from [the State] cross-examining witnesses or like really just going over what [evidence the State] had." He did not remember trial counsel's making any pre-trial motions. He claimed that trial counsel brought him one plea offer and told him that it "wasn't a good offer." He refused the offer, and trial counsel said, "[W]e're going to trial[.]" The Petitioner testified that he did not discuss a self-defense claim with trial counsel and agreed that he "never brought it up" with trial counsel. The Petitioner claimed that he was not prepared to testify on his own behalf, but that he may have chosen to testify if a self-defense claim had been made at trial. Following a discussion with trial counsel, he recalled "coming [up] with [a] strategy" and recalled signing a document to waive closing argument. He testified that he spoke with trial counsel about a severance hearing and asserted that she made a motion for severance at trial.

The Petitioner asserted that trial counsel told him that some of the statements made by Petitioner Springer were "hearsay" and that the statements would not be used at trial. He agreed that the "damaging" statements indicated that Petitioner Springer had shot the victim and that Petitioner Springer had possession of the victim's gun following the crime. Asked specifically about whether "Maurice Smith testif[ied] that [Petitioner Springer] told him that, after [the Petitioner] got shot, he shot the guy and watched him take his last breath[,]" the Petitioner replied, "Right, I thought that was hearsay." The Petitioner testified that trial counsel explained that the blood found at the crime scene matched his DNA profile and that "it was important because it could put [the Petitioner] at the scene of the crime," but counsel did not hire a DNA expert to testify at trial.

Trial counsel testified that following the conclusion of the Petitioner's trial, she left the practice of law and gave her file to another attorney. Since that time, the other attorney had passed away, and she was without her file at the post-conviction hearing. Trial counsel obtained the billing records from the Administrative Office of the Courts, the records from the jail, and emails to "recreate" her representation of the Petitioner. Trial counsel visited the Petitioner thirteen times, attended all court dates, and had kept in contact with the Petitioner's sister during the proceedings. During each of her visits, she recalled that the Petitioner was unable to focus on his case and had a "big obsession" with reducing the amount of his bond. She explained that because the Petitioner's attention was so unfocused, she had him evaluated to assess his competency and to find potential learning

---

[2] The record does not include an explanation for the delay in bringing forth the hearing in this matter.

disabilities. Trial counsel recalled that the Petitioner refused a plea offer that included severance and a reduced sentence if the Petitioner agreed to testify against Petitioner Springer. She did not recall discussing a self-defense argument with the Petitioner.

Trial counsel testified that she hired a private investigator who visited the Petitioner in jail three times, visited the scene of the crime, visited the Petitioner's former boarding house residence, and interviewed various witnesses. Trial counsel waived closing argument as a strategic decision to avoid opposing counsel's "flashy second closings." She could not recall if she discussed a severance motion with the Petitioner before trial, but she remembered making a severance motion at the end of trial and that the motion failed.

On cross-examination, trial counsel testified that the Petitioner was hurt while at the victim's place of business, but she could not remember why she did not hire a DNA expert nor why she failed to object to the State's chain of custody witness. She agreed that DNA evidence could be persuasive to a jury and acquiesced that the introduction of the Petitioner's DNA at trial could have placed him at the scene of the crime. However, she recalled that prior to the crime "[the Petitioner] had been talking to [] people" at his boarding home about being "short of money" and that a witness saw the Petitioner in bloody clothing following the commission of the crime. She collaborated with Petitioner Springer's trial counsel and compared notes. She did not object to the admission of Petitioner Springer's statements because the statements "made [Petitioner Springer] look more culpable[.]" Trial counsel secured a limiting jury instruction that only allowed Petitioner Springer's threats to a witness to be used against Petitioner Springer.

Following the hearing, the post-conviction court entered a thorough, twenty-page order denying relief, which included a footnote stating: "These petitioners were tried together, their appeal was taken up together, and the post-conviction hearing was held at the same time. This opinion is issued jointly for the sake of judicial efficiency." The post-conviction court included a separate finding of facts for each Petitioner. The post-conviction court outlined the issues presented by Petitioner Coley, as relevant here, as whether trial counsel was ineffective in failing to file a motion to sever the Petitioners, in failing to object to the introduction of evidence about threats made by Petitioner Springer to another witness, and in failing to challenge DNA evidence. In denying relief, the post-conviction court specifically found as follows:

> As listed above, the [P]etitioners have alleged several issues which they claim their trial counsel was ineffective. However, other than opinion testimony, [the Petitioners] produced little, if any evidence, that trial counsel's performance fell below the standard of effective assistance as required by law. Petitioners did not introduce any evidence that suggested there was any basis to challenge the introduction of the DNA evidence.

Petitioner Coley unsuccessfully attempted to suggest circumstantially an alibi defense. No exhibits were introduced, or witnesses produced to support the various claims of ineffective assistance of trial counsel. In fact, Petitioner Springer pretty much acknowledged that his trial counsel did what is reasonably expected of an attorney in a similar situation.

The only issue having any substance to it may be Petitioner Coley's assertion that trial counsel was ineffective in failing to file for a pretrial severance motion. However, based on the record before this court, it is unlikely that counsel would have prevailed. More likely the few incriminating statements made by the co-defendant would not have been allowed to be referenced by any witness. Other statements implicating Petitioner Coley would have been admissible as statements of a co-conspirator. Nevertheless, Petitioner Coley has failed to show that he was prejudiced by the few statements that might have been excluded in light of the strength of the State's overall case against him, including the powerful DNA evidence putting him at the crime scene[.]

Additionally, Petitioners have failed to demonstrate how they were prejudiced by any other alleged deficiency. Petitioners were heard by several housemates discussing committing a robbery because they were short of money and rent was due. They borrowed a handgun from a friend, left the house, and returned a short time later with Petitioner Coley having a gunshot wound to his arm. DNA evidence from blood was obtained from the crime scene identifying Petitioner Coley as the contributor. Petitioner Springer made several statements indicating that they were at the crime scene and watched the victim "take his last breath" after he was shot, even if inadmissible against Petitioner Coley. Despite Petitioners' allegations, there has been no showing that but for trial counsel's supposed errors, the outcome of this case would have been different.

The Petitioner filed a timely notice of appeal, and this case is properly before this court for review.

## ANALYSIS

On appeal, the Petitioner argues that the post-conviction court violated due process by hearing his post-conviction petition simultaneously with the petition of Petitioner Springer. The Petitioner also argues that trial counsel was ineffective in failing to file a pretrial severance motion and in waiving a claim regarding the chain of custody for the State's DNA evidence. In response, the State contends that the Petitioner waived his due

process claim because he failed to object prior to or during the post-conviction hearing. Alternatively, the State argues that the Petitioner was given the opportunity to be heard and due process was not violated. The State further contends that the post-conviction court properly denied relief. We agree with the State.

A claim for post-conviction relief based on alleged ineffective assistance of counsel and presents mixed questions of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's finding with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley, 397 S.W.3d at 80 (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. Id. (Grindstaff, 297 S.W.3d at 216; Finch v. State, 226 S.W.3d 307, 315 (Tenn. 2007); Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). However, to establish prejudice in the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the petitioner would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**Due Process Claim.** First, the Petitioner argues, without analysis, that his due process rights were violated because the post-conviction court failed to hold an independent hearing on his petition. He admits that he did not raise this objection prior to or during the hearing but contends that it did not arise until the order of the post-conviction court conflated issues that "were presented in a way that was damaging to the Petitioner's arguments during the joint hearing." He claims that the post-conviction court's order makes it "impossible in most instances to tell which [Petitioner] the [c]ourt is making findings on, with specific reference to testimony presented at the hearing[.]" Finally, without analysis of Rule 14, the Petitioner argues that severance was appropriate under Tennessee Rule of Criminal Procedure 14 because it "was necessary to achieve a fair determination of the guilt and innocence of [the Petitioner]." As an initial matter, we agree with the State, and conclude that the Petitioner has waived review of this issue for failure to raise it before the post-conviction court. See Tenn. R. App. P. 36(a). We additionally find the issue is waived based on the Petitioner's failure to brief Rule 14 and the due process issue. See Tenn. R. App. P. 27(a)(6), (7); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this court."). Waiver notwithstanding, we disagree with the Petitioner's characterization of the post-conviction court's order. The order began with a notation that the Petitioners were tried together, their appeal was "taken up together," and, for the sake of judicial efficiency, the post-conviction hearing was held at the same time. The order provided a separate section for findings of fact for each Petitioner and a separate section for issues presented by each Petitioner. While the conclusion of law section was not separated in the same way, this is because the post-conviction court concluded that both Petitioners "put forth little, if any evidence" in support of their ineffective assistance of counsel claims. As outlined above, the post-conviction court specifically stated,

The only issue to have any substance to it may be Petitioner Coley's assertion that trial counsel was ineffective in failing to file for a pretrial severance motion. However, based on the record before this court, it is unlikely that counsel would have prevailed. More likely the few incriminating statements made by the co-defendant would not have been allowed to be referenced by any witness. Other statements implicating Petitioner Coley would have been admissible as statements of a co-conspirator. Nevertheless, Petitioner Coley has failed to show that he was prejudiced by the few statements that might have been excluded in light of the strength of the State's overall case against him, including the powerful DNA evidence putting him at the crime scene[.]

Albeit somewhat unorthodox in format, the post-conviction court clearly outlined an independent basis for the denial of post-conviction relief as to Petitioner Coley. Accordingly, the Petitioner has failed to establish a violation of due process, and he is not entitled to relief.

**Pretrial Severance Based on Bruton.** Second, the Petitioner contends that trial counsel was ineffective because she failed to file a pretrial severance motion. While not entirely clear from the Petitioner's brief, it appears he claims that he was entitled to a pretrial severance from Petitioner Springer based on Bruton v. United States, 391 U.S. 123, 131 (1968). As grounds in support of relief, the Petitioner identified two statements by Smith, a witness who testified at trial that (1) Petitioner Springer told him that "after [Petitioner Coley] got shot, he shot the guy and watched him take his last breath[,]" and (2) Petitioner Springer was in possession of a chrome .25 automatic pistol, and that Petitioner Springer told him it was the victim's gun. The Petitioner argues "there was no proof that these statements were made in the presence of Petitioner Coley," and that those statements "are exactly the statements that could have been kept out of a trial against Petitioner Coley for violation of the rule set forth in Bruton."

In Bruton v. United States, 391 U.S. 123, 136-137 (1968), the United States Supreme Court held that, "where two defendants are jointly tried, admission of one defendant's pre-trial statement implicating the co-defendant violates the co-defendant's Sixth Amendment right to confront and cross-examine witnesses against him." State v. Jack Price, No. E2011-01050-CCA-R3-CD, 2013 WL 5371679, at *13 (Tenn. Crim. App. Sept. 26, 2013) (citing Bruton v. United States, 391 U.S. 123, 136-137 (1968)). Further, this court adopted the extension of Bruton from the Sixth Circuit Court of Appeals, "holding that the prohibition applies not only to a non-testifying codefendant's *confessions*, but also to *statements* made by the codefendant that implicate the defendant." State v. Ruby Breeden, No. E2004-01512-CCA-R3-CD, 2005 WL 3199280, at *8 (Tenn. Crim. App.

- 12 -

Nov. 30, 2005) (quoting Pettyjohn v. Newberry, 225 F.3d 659 (6th Cir. 2000)) (emphasis in original).

Rule 14 of the Tennessee Rules of Criminal Procedure provides that the court shall grant a severance of defendants if deemed appropriate to promote a fair determination of the guilt or innocence of a defendant. Tenn. R. Crim. Pro. 14(c)(2)(i) and (ii). The decision as to whether or not to grant a severance is left to the sound discretion of the trial judge, and this decision will not be disturbed unless the defendant is unfairly or unduly prejudiced. State v. Maddox, 957 S.W.2d 547, 556 (Tenn. Crim. App. 1997) (citing State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981); State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990); State v. Kyger, 787 S.W.2d 13, 20 (Tenn. Crim. App. 1989); State v. Hodgkinson, 778 S.W.2d 54, 61 (Tenn. Crim. App.1989); State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982)).

At the top of her testimony, trial counsel agreed that she moved to sever Petitioner Coley's case from Petitioner Springer's after the admission of testimony regarding Petitioner Springer's threats against other witnesses. Trial counsel did not recall the specifics of why she did not file a pretrial motion to sever. Post-conviction counsel pressed the issue and asked "why [trial counsel] would not have objected to Petitioner Springer's statements being introduced at trial in as much as they could only be used against [Petitioner] Coley[?]" Trial counsel replied, "Are you saying him admitting to shooting? Is that what you're talking about[?]" Post-conviction counsel said yes, and trial counsel replied, "I would assume that that would make [Petitioner] Springer look more culpable and [Petitioner] Coley be a victim of a . . . of being shot, I assume. But I am so sorry. I don't remember." Trial counsel agreed that during a certain exchange at trial between the State and Smith, it is "difficult to say," to whom Smith referred when he said "after [the Petitioner] got shot, *he* shot the guy and watched him take his last breath." Trial counsel could not recall whether she adequately "tease[d] out" the issue for the jury to determine who was the shooter in the statement. With this line of questioning, post-conviction counsel seemingly implied that it was unclear from Smith's statement whether "he" referred to Petitioner Coley or Petitioner Springer.

The post-conviction court determined that it was "unlikely" counsel would have prevailed on this issue. The post-conviction court reasoned that it would have been more likely that any incriminating statements made by Petitioner Springer would not have been allowed to be referenced by any witness. The post-conviction court additionally determined that "other statements" implicating Petitioner Coley would have been admissible as statements of a co-conspirator and that Petitioner Coley had failed to establish prejudice in light of the powerful DNA evidence placing him at the scene.

As outlined in the facts from the direct appeal, this court recounted the testimony of Smith and noted that upon the Petitioners' return to the boarding house, Petitioner Coley had been shot in the arm and was bleeding on his shirt; Smith advised him to run cold water on the wound. Petitioner Springer was hysterical and told Smith that "after []Coley was shot, [] *Springer* shot the man and 'watched him take his last breath.'" State v. Springer, 2014 WL 2828932, at *2 (emphasis added). Smith also testified that Petitioner Springer told him the circumstances under which Petitioner Coley had been wounded: "Bud [Petitioner Coley's nickname] was supposed to jump him and the guy got the best of him and shot Bud." Id. Nwaigwe also testified and agreed that Petitioner Springer said, "I think I shot him." Id. at *3. We are puzzled by Petitioner Coley's claim herein that trial counsel, in effect, should have moved to sever his case from that of Petitioner Springer based on Smith's testimony. Clearly, as testified to by trial counsel, Petitioner Springer's statements showed that Petitioner Coley was less culpable in the offense. In any case, there is no Bruton violation on this record. Petitioner Coley was not implicated in the statements as testified to by Smith and identified at the post-conviction hearing. Moreover, as discussed by the post-conviction court, Petitioner Coley has not demonstrated that he was prejudiced "to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty." Maddox, 957 S.W.2d at 556 (internal citations omitted). Petitioner Coley's DNA from blood was found at the scene of the homicide. Accordingly, because severance was not necessary to promote a fair determination of Petitioner's guilt or innocence, Petitioner Coley has failed to establish that trial counsel was ineffective in failing to file a motion for severance. He is not entitled to relief as to this issue.

**Chain of Custody.** Next, in a single sentence in his brief, the Petitioner argues trial counsel was ineffective in failing to object to the chain of custody relating to the State's DNA evidence. He claims that "waiv[er] of the chain of custody issue related to the DNA evidence had no basis and is indefensible[.]" On direct appeal, this court determined that the chain of custody issue was waived as to Petitioner Springer, not Petitioner Coley. Defense counsel for Petitioner Stringer objected to the State's offer to bring in additional witnesses to cure any defect in the chain of custody. State v. Springer, 2014 WL 2828932, at *14. As outlined earlier, Petitioner Coley's counsel asserted that the receiving clerk was routinely called in drug cases, and this court thoroughly analyzed the issue. In denying relief, this court concluded, in relevant part, as follows:

> In this case, the crucial piece of DNA evidence tying the [Petitioners] to the crime was the stereo, spattered with [the Petitioner's] blood, recovered from the site of the murder. Officer Kirby testified he collected and sealed this evidence, Detective Filter testified he took it to the TBI, and Ms. Staples testified that the TBI's receiving clerk obtained it from Detective Filter and that she took it from the clerk and analyzed it. The other pieces of blood DNA

evidence were also obtained from Detective Filter on that same date. There is no indication that any tampering occurred. We conclude that the State established with reasonable assurance the identity and integrity of the evidence challenged by [the Petitioner]. Accordingly, this issue is without merit.

Springer, 2014 WL 2828932, at *15.

At the post-conviction hearing, trial counsel could not recall why she did not object to the chain of custody regarding the introduction of the Petitioner's DNA. However, as reflected above, the issue was properly preserved and rejected by this court on direct appeal. As such, we conclude the Petitioner has failed to establish deficient performance or prejudice to his case. Finally, the Petitioner makes a fleeting argument that the cumulative effect of the errors of trial counsel requires a new trial. Because the Petitioner failed to establish any errors on this record, analysis under the cumulative error doctrine is unnecessary. State v. Hester, 324 S.W.3d 1, 77 (Tenn. 2010) ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings."). Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Because the Petitioner has failed to establish that he received ineffective assistance of counsel, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

- 15 -